# SUPREME COURT

OF THE

## STATE OF LOUISIANA.

---

## EASTERN DISTRICT:

BATON ROUGE....AUGUST, 1832.

---

### FLETCHER ET AL. vs. CAVALIER ET AL.

APPEAL FROM THE COURT OF THE THIRD DISTRICT, THE JUDGE OF THE SECOND PRESIDING.

Under the laws of Spain, natural fathers who have no legitimate issue, may dispose of all or any part of their estate in favor of their natural children.

The sale of minor's property by private contract, is absolutely void.

An alteration in a baptismal registry, by erasing the word "natural," and writing over it the word "legitimate," has no effect in preventing the registry from being used to establish the period of birth, although the alteration be not accounted for. It would be otherwise if the document were offered to establish the legitimacy of the parties.

An objection to a will which refers to a mere relative nullity can alone be taken advantage of by the legal heirs.

EASTERN DIS.
*August,* 1832.

FLETCHER
ET AL.
*vs.*
CAVELIER
ET AL.

Where the object is to establish that certain property made part of the estate, an extract from the inventory is proper evidence, and the whole need not be produced.

Where oyer of a document is prayed, the party may decline to answer until it is produced, or he may amend his answer if the oyer was prayed after it was filed.

Ancient titles are proper evidence when not opposed to a grant from the United States.

A private act has no effect against third parties, except from the date of its registry.

The possessor, in good faith, is entitled to the value of his improvements

The facts are stated in the opinion of the court, delivered by MARTIN, J.

The plaintiffs state themselves to be the only legitimate children of James Fletcher, deceased, and, as such, his legal and forced heirs for four-fifths of his estate, and his testamentary heirs of three-fourths thereof; but declare that out of respect for his memory and regard for their mother, the undisputed heir for the other fourth, they have reduced their pretensions to their claims in the latter capacity, and demand from the defendants the restitution (with the fruits and profits) of three-fourths of two tracts of land, which they describe in the petition, now in the possession of the latter.

The defendants severed in their answer; but all pleaded the general issue and prescription.

The executors of Cavelier, senior, claimed title under Clarke; the vendee of the petitioners' mother, averred Clarke's, their testator's and their own good faith, claimed the value of their improvements, and called the heirs of their vendor in warranty.

Cavelier, junior, and Davenport, claimed title under Boisfontaine, the vendee of Clarke, the vendee of the plaintiffs'

Eastern Dis.
August, 1832.

FLETCHER
ET AL.
vs.
CAVELIER
ET AL.

mother, and averring Clarke's, Boisfontaine's, and their own good faith, claimed their improvements, and cited Boisfontaine in warranty.

Nelson's heirs denied their possession of any land of the plaintiffs, but averred their ancestor's title under a certificate of the land commissioners of the United States; they averred his and their good faith, and ignorance of the plaintiffs' claim.

Boisfontaine made title under a notarial act of sale from Clarke, and pleaded prescription.

The curator of the heirs of Mary Clarke, the heir of D. Clarke, made title in the latter by a notarial act of sale from the plaintiffs' mother and tutrix. He denied the plaintiffs' right to sue ; averred a sale from the plaintiffs' father to Canez, to whom Clarke was compelled to pay a large sum of money to induce him to relinquish his title.

There was a verdict and judgement for the defendants, and the plaintiffs appealed.

The appellees, in the inferior court, took great pains to contest the legitimacy of the appellants; but the restriction of their pretensions to a claim under the will, has rendered the examination of this circumstance perfectly useless, as the appellee's counsel has admitted that the will is clothed with all the formalities required by the laws of the country at the period at which it was made, and that it was duly opened and proved before the competent tribunal. Admitting the marriage of the appellants' parents was absolutely void, still they had capacity to take under the will, as their father had no other issue, and the *Recapilacion of Castille*, 5, 8, 8, allows natural fathers who have no legitimate issue, to dispose freely of all or any part of their estates, in favor of their natural children.

*Under the laws of Spain, natural fathers who have no legitimate issue, may dispose of all or any part of their estate in favor of their natural children.*

As all the appellees (except Nelson's heirs) claim mediately under the appellants' father, through a sale from his widow and their mother, it is unnecessary, as far as the former are concerned, to inquire into the validity of his title. That of these appellees rests on the sale of this woman to Clarke, which has appeared to us absolutely void, as far as it

*The sale of minors' property by private contract is absolutely void.*

EASTERN DIS.
August, 1832.

FLETCHER
ET AL.
vs.
CAVELIER
ET AL.

regards the appellants; it being the sale of their property, by their tutrix, on a private contract or bargain, although ordered by a decree of the Superior Court of the territory, who, though authorized to order such a sale, could not, even if it had done it formally and expressly, dispense with its being made with all the formalities required by law for such sales. *Partida*, 6, 16, 18. *Id.* 5, 5, 4. *Febrero*, 3, 3, § 1. *n.* 68, *a.* 80. *Françoise* vs. *Delaronde*, 8 *Martin*, 625. *Chefneau's heirs* vs. *Saddler*, 10 *Martin*, 726. *Leonard's tutor* vs. *Mandeville*, 9 *Martin*, 489. *Joyoso* vs. *Gauia*, 1 *Martin*, *N. S.* 336.

These appellees cannot avail themselves of the plea of prescription, since the eldest of the appellants was born in March, 1797, and did not come of age till 1818: and they are residents of Vera Cruz. A suit for the land was brought in 1824, discontinued, and the present brought in June, 1827.

The appellees, it is true, took several bills of exceptions to the evidence introduced by the appellants to establish the period of their respective births, *i. e.* copies of the baptismal registry. The objection was, that it was evident from these copies, that the registry had been mutilated or altered.

The appellants had been baptized as natural children; the word "natural" appears to have been erased, and the word "legitimate" written over it, and a note in the margin states this alteration to have been made in pursuance of a decree of the vicar general. The decree was not produced, and the authority of the vicar general to make it was denied.

We think the objection was properly overruled by the district judge. The registry was not mutilated, but altered, in a part which would have been important, had the document been offered to establish the legitimacy of the parties. Had this been the case, it might have been proper to inquire into the manner in which the alteration was made, and the authority of the officer who ordered it; but the alteration has no effect in preventing the registry from being used to establish the period of the births of the appellants.

There was another bill of exceptions to the introduction of evidence to establish the marriage of the appellants' parents,

and the titles of their father's vendors. These bills we have not deemed necessary to examine. The first are of no moment, as we do not inquire into the legitimacy, and the latter are of no weight in this part of the case. It is, therefore, clear, the appellants must recover from these appellees, since the title of the former was never legally divested, nor did the latter acquire any by prescription.

EASTERN DIS.
August, 1832.

FLETCHER
ET AL.
vs.
CAVELIER
ET AL.

This leads us to the inquiry into the title of Nelson's heirs.

From an examination of the plot of surveys they have produced and Fletcher's deed, it appears that the land they claim is covered by Fletcher's title. Their ancestor entered on it in 1809, and afterwards purchased a claim from Mons, on which he or his heirs afterwards obtained the certificate of the land commissioners of the United States.

As these appellees do not claim mediately or immediately under the appellants' father, who acquired in 1800, and the possession of Nelson in 1809, interrupted the prescription, the appellants have produced a notarial act of transaction duly homologated, by which Magdalin Cartier acquired the premises in 1797, her will, and the sale of her executor and heirs.

These appellees took a bill of exceptions to the opinion of the District Court, who overruled their objections to the introduction of the will in evidence. These objections were that,

1. It was not shown that the notary did complete the will, without turning to other acts, nor is it stated that it was written in the words dictated by the testatrix.

2. She did not sign.

3. It does not appear that it was proven, nor that letters testamentary issued.

We do not think the District Court erred in overruling these objections.

If the first objection has any weight, it refers to a mere relative nullity, of which the legal heirs could alone take advantage.

The testatrix declared she knew not how to sign, and the will expressly states that the witnesses subscribed it at her request.

FLETCHER
ET AL.
*vs.*
CAVELIER
ET AL.

An objection to a will which refers to a mere relative nullity can alone be taken advantage of by the legal heirs.

Where the object is to establish that certain property made part of the estate, an extract from the inventory is proper evidence, and the whole need not be produced.

Where oyer of a document is prayed, the party may decline to answer until it is produced, or he may amend his answer if the oyer was prayed after it was filed.

Ancient titles are proper evidence when not opposed to a grant from the United States.

The will is an authentic one, and required no proof. We are ignorant of any law prior to the code of 1808, requiring letters testamentary to issue.

The appellees took a bill of exceptions to the introduction of an extract of part of the inventory of Magdalin Cartier, on the grounds that,

1. The whole was not produced.

2. That the document was irrelevant and nothing connected it with the title pleaded.

3. That it was not produced on the demand of oyer.

We think the court did not err. The object was to establish that certain property made part of the estate, and nothing required the whole inventory to be produced for this purpose.

If the document be irrelevant, some time may have been lost in reading it to the jury. But this is not an evil that we can remedy.

If the document was not produced on the prayer for oyer, the party might have declined to answer till it was, or amended his answer if the oyer was prayed after it was filed.

The appellees further objected to the introduction in evidence of the deed of sale of Cartier's executor and heirs, on the ground that it was not recorded in the land office west of Pearl River and east of the island of New-Orleans.

We think the court did not err in admitting this deed. Had these appellees obtained a grant from the United States, they might, perhaps, have had their objection examined. 1 *Mar. Digest*, 330. But the commissioner's certificate is not of equal dignity with a grant, though it may entitle the holder to one. The objection is based on an act of Congress which only prohibits the offering in evidence ancient titles where they are opposed to a grant from the United States, and the party claiming the benefit of this provision, should bring himself strictly within it.

The objection to documents from the land office, as copies of copies, relate to evidence to support the title of those from whom Magdalin Cartier acquired. As we have not examined their titles, we do not notice the bill of exceptions thereon.

Nelson purchased in 1809, (December) a claim of Mars, who had had the land surveyed in the month of June, preceding; but Mars's sale being a *sous sing privé*, must have for his legal date, as to third parties, that of its registry (June, 1811). In November, 1819, the commissioners' certificate was obtained thereon.

This title cannot prevail against the appellants, which dates from 1793; neither can prescription avail these appellees.

Of the pleas of the parties called in warranty, but that of the curator of Clarke's heirs, alleging a conveyance from the appellants' father to Canez; this is admitted, but the appellants have met it by producing Canez's retrocession by an authentic act.

All the appellees and Cavalier, senior, Boisfontaine, and Nelson, appear to have holden in good faith, and are entitled to the value of their improvements.

It is, therefore, ordered, adjudged, and decreed, that the judgement of the District Court be annulled, avoided, and reversed, and that the appellants recover from the appellees three undivided fourths of the land in the latter's respective possessions; and that the case be remanded, with directions to the District Court to ascertain whether any part of the consideration received by the appellants' mother went to the payment of any debt of their father, which they were bound to pay, and whether any payment was made by Clarke to Canez, which the appellants are legally bound to reimburse, in whole or in part, ascertain the value of their respective improvements and their claim against the parties called in warranty, and give judgement accordingly; and it is ordered, that no execution shall issue for the appellants till they shall have paid the value of the improvements, respectively. The costs in both courts to be paid by the appellees.

EASTERN DIS.
August, 1832.

FLETCHER
ET AL.
*vs.*
CAVELIER
ET AL.

A private act has no effect against third parties, except from the date of its registry.

The possessor, in good faith, is entitled to the value of his improvements.

EASTERN DIS.
August, 1832.

PORTER, J., on a rehearing:

FLETCHER
ET AL.
vs.
CAVALIER
ET AL.

The purchaser of minors' property, by private contract, will be considered a possessor in bad faith.

Reference to a title deposited in the office of another notary, is not equal in law to a communication of that title to the vendee; nor is the means afforded by the reference equivalent to actual knowledge, which will alone destroy good faith.

Good faith is always presumed until the contrary be shown, and that presumption is not destroyed by proving that the vendee had the means of obtaining knowledge of the defect in his title.

Reference to the title deeds in another notarial office, repels the presumption that, as accessories to the thing sold, they were delivered to the parties.

The widow and heirs of Nelson, who claim under a purchase from one Mars in the year 1809, and a subsequent confirmation of their title by the government of the United States, obtained a rehearing in order that we might more fully examine whether the title of the plaintiffs covered the premises possessed by these defendants. The plaintiffs have also been heard on a demand made by them for a revision of that part of our former judgement, which considered the defendants as possessors in good faith.

The petition for a rehearing on the part of the heirs of Nelson, as well as the argument at bar seemed to concede, what indeed without such admission must have been so decided, that the original title to Beau Regard under which the plaintiffs claim, embraces the locus in quo. But it was contended, that the title to the whole tract conceded to the grantee by the Spanish government, is not vested in the plaintiffs.

The original title to Beau Regard is for twenty arpents front, bounded on one side by the Bayou Manchac, and on the other by lands of Juan Fitzpatrick.

A few months after the date of this grant, the grantee applied for, and obtained a concession for an additional forty

arpents in depth, lying behind that first conceded. The boundaries given in this title are, lands of Bouligny on one side, and on the other, those of Fitzpatrick.

At the death of Beau Regard the property was inventoried under this description, "Seventeen arpents in front more or less with the ordinary depth, on which a fort belonging to his majesty is erected."

Subsequently a transaction took place between a certain Madame Cartier, and the widow of the deceased, by which the property inventoried as his estate, was transferred to the former.

Cartier made a last will and testament, by which she instituted her sons Elias and Jean Babtiste Beau Regard, her executors, and at the same time bequeathed to them, and to the children of another son deceased, and to the children of a daughter also deceased, all the property of which she died possessed.

The sale to the ancestor of the plaintiffs, appears to have been made by the executors of Cartier, by the widow of her deceased son, and by the surviving husband of her daughter, also deceased. The two last mentioned most probably acted for their minor children, though the act speaks of them as selling in their own right. The property is described as containing "eight arpents of land in front by the depth of eighty or more, bounded on one side by the old town of Manchac, and on the other by lands of Madame Hysen." At the close of the instrument and before signing, the vendors declare, that it comprehends all the lands behind those mentioned in virtue of the purchase made of them by Louis Toutant Beau Regard, through his mother Madeline Cartier, from Captain Marlin Sulcedo, deceased.

In a sale made by Fletcher to one Canez, the property is described as containing eight arpents in front by the depth of eighty. Canez failing to pay the purchase money, retransferred the land to the plaintiffs, as heirs of Fletcher deceased, and the same description is given of it, eight arpents in front by the depth of eighty.

FLETCHER
ET AL.
vs.
CAVELIER
ET AL.

But in the sale from the widow of Fletcher to Clarke, a designation of the quantity sold is found totally at variance with that given in the conveyances under which her husband had acquired it. The land is stated to have not eight, but twenty-eight arpents in front, with eighty, more or less, in depth; and to be bounded on one side by the town of Mauchac, and on the other by the lands of Ms. Fauchon.

The plaintiffs must show title to the premises. The concession for twenty arpents called for the Bayou Manchac as the lower boundary. The sale from the representatives of Cartier to the ancestors of the petitioners, conveys eight arpents in front, bounded below by the town of Manchac. This town of Manchac is proved in evidence to have extended four arpents above the fort, and the fort is shown to have had an extent from four to six superficial arpents. In whatever way then the act is considered, the terms used in it did not convey to Fletcher, the land possessed by the heirs of Nelson. If we take the designation of quantity, we find he only purchased eight arpents in front, instead of twenty, which his heirs now claim. And if we admit that the boundaries given, control the enumeration of quantity, as they ought to do, still these boundaries do not give a front of twenty, but of fourteen arpents. We can discover nothing in the conveyances, which would authorize us to give the plaintiffs land beyond these boundaries. It is possible the heirs of Cartier intended to sell all the land to Fletcher, indeed it is probable they did, but assuredly they have not done so. The act itself contains no such declaration. It states the sale of eight arpents in front with the depth of eighty, which they inherited from their ancester, terms which would be satisfied by a sale of a part, as well as of the whole of the tract.

We, therefore, think the plaintiffs are not entitled to recover against the heirs of Nelson, whose title does not extend beyond the old town of Manchac, by which the plaintiffs are bounded.

The next question relates to the good faith.

The mother of the plaintiffs sold by private act to Daniel Clarke. This mode of alienating minors' property is prohibited by law; he was, therefore, a possessor in bad faith.

EASTERN DIS. *August,* 1832.

FLETCHER ET AL. *vs.* CAVELIER ET AL.

On the sixth March, 1811, Clarke sold to Bois Fontanes the one-half of the land lying at Mauchac, which he had acquired by act passed before Pedro Pedescleaux, on the 23d June, 1806. This sale contains the usual clauses of warranty.

The first of August, 1815, the executors of Clarke sold, with warranty, to Cavalier Pere the other half, and gave, *verbatim,* the same reference for Clarke's title, with that contained in the act to Boisfontanes, which has been just set out.

The purchaser of minors' property by private contract will be considered a possessor in bad faith.

The sale from these persons to those now in possession, all admit of the same remark. In the deeds of conveyance it is stated the vendors acquired them by purchase from Clarke, or his executors, and reference is given to the date of the sale, and to the office of the notary where it was passed.

The titles under which the defendants claim are what the law denominates just titles, and the possessors must be considered in good faith, unless the reference in the deeds of sale, to the title under which the conveyance is made, destroys that good faith. The question which the argument at bar presents, may be considered in two points of view. First, is the reference to a title deposited in the office of another notary, equal in law to a communication to the vendee of that title, or, in other words, does it create such a presumption *juris et de jure* of a knowledge of its contents, as that other proof of the fact is superfluous, and evidence cannot be received against it? We think not. Nothing of that kind has been shown, and we know of no such presumption in our law. If this be true, the second aspect under which the subject should be considered is, whether the means of obtaining knowledge afforded by the reference, be equivalent to actual knowledge? We are not prepared to say so; because that reference may not be followed up by examination of the title; the knowledge of the defect of title is not in fact acquired, and nothing but actual knowledge will destroy the good faith. When the title under which the vendor sells, is shown to the

Reference to a title deposited in the office of another notary is not equal in law to a communication of that title to the vendee, nor is the means afforded by the reference equivalent to actual knowledge which will alone destroy good faith.

EASTERN DIS.
August, 1832.

FLETCHER
ET AL.
vs.
CAVELIER
ET AL.

buyer, or delivered to him, or he declares in the act he is acquainted with it, the defects of that title are, of course, known to him; but unless a reference to the place where that title can be found, be equivalent, in law, to an actual exhibition of it, we cannot presume in point of fact, the knowledge was obtained.  The well established rule being, as we understand, that good faith is always presumed, until the contrary is shown.  That presumption is not destroyed, in our judgement, by proving that the vendee had the means of obtaining knowledge of the defect in his title.  This would be saying, that negligence in not making himself acquainted with the fact, was equivalent to an ignorance of law, when the fact was brought home to him.

*Good faith is always presumed until the contrary be shown, and that presumption is not destroyed by proving the vendee had the means of obtaining knowledge of the defect in his title.*

It has been argued that the title deeds are considered as accessories to the thing sold, and must be presumed to be delivered.  But this presumption is repelled in the present case by a reference to the title in another notarial office, a reference which would have been vain and useless, if the title itself had been delivered.

*Reference to the title deeds in another notarial office, repels the presumption that as accessories to the thing sold, they were delivered to the parties.*

Authorities have been read from the English books, which impute knowledge to a buyer of any incumbrance, created by titles to which he may be referred by the act of conveyance under which he acquires the property.  These decisions are not binding on us, and the reasons on which they rest do not recommend themselves to our adoption.  They establish a presumption, we believe, totally opposed to the mode of transacting business in this country.  In the greater number of instances we understand the fact to be, that a buyer who purchases with warranty, does not examine all the previous titles.  He is in general content with that which the vendor professes to sell, and with his guarantee.

The case decided in 2 *Martin's Reports, N. S.* 618, does not impugn the principles just laid down.  That was an action in warranty, founded on an allegation that the vendor had concealed a fact which it was important the vendee should know, *id est*, the existence of a mortgage on the premises. The court held that the reference in the act of sale to the

vendee of the title under which the vendor had acquired, in which title express mention was made of this mortgage, disproved such an allegation, and exculpated the vendor from the charge of concealment. This decision was correct, because the means afforded of knowledge by express reference, fairly rebutted any such intention. But here we are required to say, that the means afforded to obtain knowledge not only destroyed a recourse founded on an alleged concealment, but is equivalent to actual knowledge. Things quite different. In the one case, the means expressly given of acquiring information, repelled the charge of concealing the fact; and whether the vendee followed it up by inquiry or not; the vendor could not be said to have acted in bad faith, and here, unless the vendee followed up the reference by an examination of the title, he had not the knowledge, and was not in bad faith.

It is said that the heirs of Clarke have been brought in as warrantors; that he was in bad faith, and that the question should be examined in relation to him alone.

The original defendants are the persons upon whom the judgement of this court must first bear. If they were not in bad faith, they cannot be mulcted for that of their vendor. If the sins of the warrantor were to be visited upon those who call him into court, the resort against the former would often work an injury to those to whom the law presents it as a benefit; for, after having paid for his misdeeds, his insolvency might defeat their indemnity.

Our former judgement, therefore, remains untouched, except so far as it concerns Nelson's heirs, and as to them, it is ordered, adjudged, and decreed, that there be judgement against the plaintiffs, with costs in both courts.

*Cuvillier* and *Mazereau*, for appellants.
*Moreau*, *Turner*, and *Morgan*, for appellees.