Montgomery, Guardian vs. Whitfield.

## No. 1204.

### S. S. MONTGOMERY, GUARDIAN, VS. MRS. MARY F. WHITFIELD.

1. When, through the mediation of certain tax proceedings and sale, a delinquent tax-payer is apparently divested of title to realty, and by a subsequent conveyance, for a price of about the same amount as the taxes paid. she is apparently re-invested with a *new* title. a fair presumption is raised of the tax-debtor's intention to clear the land of some encumbrance thereon. In such case these proceedings· and sale only have the effect of a payment of the taxes, and an acquittance for the same, and they leave the title where it was at their incipiency.

2. If the title under which an acquisition has been made, be null in itself, from defect of form, or discloses facts which show that the person from whom it is acquired has no title, it cannot form the basis of prescription. It is not sufficient to deprive the person of the right of pleading prescription that he might by enquiry and careful examination, discover his vendor had no title. If nothing appears on the face of the deed which is defective. the knowledge of the want of right, in the person who sold, is not brought home to the vendee, and his error is one of fact, and not of law.

3. If the title under which the defendant claims is what the law denominates a just title, the possessor thereunder must be considered in good faith, unless there is some reference in the deed of sale, to the title under which the conveyance is made, which destroys that good faith.

4. But after a possessor *animo acquirendi* has purchased in good faith, it may be terminated, and of right ceases from the moment the defects of his title are made known to him by extraneous evidence, or by suit instituted for the recovery of the property by the true proprietor.

APPEAL from the Twenty-seventh District Court, Parish of Richland. *Williams,* J.

*Wells & Toler* and *Clinton & Garrett* for Plaintiff and Appellee.

*Bernard Titche* for Defendant and Appellant:

#### I.

1. Informalities connected with or growing out of any public sale are prescribed against in five years, whether against minors, married women or interdicted persons. R. C. C. 3543.

2. Tax sales are public sales within the meaning of this statute. Saunders on Taxation, p. 318; Roberts vs. Zansler, 34 Ann. 205 ; Giddens vs. Mobley, 37 Ann. 419, bottom.

3. Tax titles are, and under Act 47 of 1873 were *prima facie* valid sales. Constitution of 1868, Article 118; Constitution of 1879, Article 210.

4. A tax collector's deed, regular in its form and recitals, is presumed to convey title. The holder need not establish its validity or compliance· by the officers with the law regarding assessment, advertisement, etc. The person attacking the title assumes the burden of proving irregularities sufficient to annul it, and if he fails, the tax title will be maintained. Giddens vs. Mobley, 37 Ann. 419 ; Fishel vs. Mercier, 32 Ann. 707.

#### II.

1. Good faith is always presumed. C. C. Art. 3481.

2. The possessor in good faith is liable for rents only from judicial demand, and is entitled

to reimbursement for taxes paid, expenses of preserving the property, and the payment of enhanced value for the property resulting from improvements put upon it  C. C. 3453.

3. He is in good faith who possesses as owner by virtue of an act sufficient in terms to transfer property, the defects of which he was ignorant.  C. C. 503.

Which he supposes to belong to the person selling.  C. C. Art. 3451.

Where the title is free from defects of form and the property is not transferred from want of title in the party making it, a purchaser (ignorant of the want of title) is in good faith.  Frique vs. Hopkins, 4 N. S. 224; Morris vs. Covington, 2 Ann. 259; Dufilho vs. Mayer, 27 Ann. 398.

### III.

1. A purchaser at a tax sale who holds by a title not defective in form is a possessor in good faith.  Giddens vs. Mobley, 37 Ann. 417, and authorities there cited.

2. Even though the assessment be absolutely null, and equivalent to no assessment at all. Hickman vs. Dawson, 35 Ann. 1086.

3. Even where the sheriff was absolutely without authority to sell.  Eldridge vs. Tibbets, 5 Ann. 380.

4. This doctrine has been carried so far that this Court in a recent case held that the purchaser is in good faith, though the sheriff in making the sale was acting in violation of a prohibitory law.  Wederstrandt vs. Frehan, 34 Ann. 705.

The opinion of the Court was delivered by

WATKINS, J.  The petitioner sues, as the Mississippi guardian of the minor children, issue of the marriage of Harrison P. Montgomery with Minerva L. Harrington, citizens of this State, now deceased, for the recovery of an undivided one-half interest in a certain tract of land, in Richland parish, known as the Eureka plantation, and for the revenues thereof, from January 1, 1876, which are placed at $500 per annum. He avers that H. P. Montgomery married the mother of his wards in 1862, and purchased this property on the 14th of July, 1869, and that in the month of January, 1873, she died and they inherited their mother's one-half interest therein, said land being community property. It is alleged that the defendant is a possessor in bad faith.

Since the institution of this suit, one of the minors has attained the age of majority, and has made himself a party plaintiff, joining the guardian in the prosecution of this suit.

The defendant sets up title in herself under a *donation en paiement* from H. P. Montgomery — to whom she was married after the demise of, his first wife—in payment and satisfaction of certain paraphernal claims of hers against him.  She also claims title to the land sued for, by virtue of a tax sale executed by the sheriff and tax collector, to Mangham and Yarborough, and by them conveyed to her.

In the alternative she alleges, that if the full ownership of the property is not in her, she is a possessor in good faith under the original conveyance from her husband, and by virtue of the tax title, and, as such,

entitled to reimbursement for the enhanced value of the plantation resulting from the improvements put upon it, and is liable for rents and revenues *only* from judicial demand.

There was judgment in favor of the plaintiffs for the half-interest in the land claimed, compensating their demands for rents with those of defendant for improvements and taxes, and rejecting defendant's claim of title as to the other half under both deeds.

From this decree the defendant appeals, and the plaintiffs file an answer and pray that the judgnent appealed from be affirmed.

I.

The principal facts were agreed upon by counsel, and they have been supplemented by other evidence, the whole of which leaves but two questions for us to determine and decide. They are: 1. Whether the defendant acquired title to the half-interest in the property that is claimed by the plaintiffs through the mediation of the tax proceedings and sale, and subsequent conveyances to her; and, 2, whether she occupies the position of a good faith possessor under either the *dation*, or tax sale.

Plaintiffs' counsel concede that the value of the land has been enhanced since the defendant's acquisition under title from her husband, to the extent of $2000.

II.

The deed of the tax collector was executed, on the 12th of December, 1876, to Mangham and Yarborough, the property in question having been adjudicated to them, in joint ownership, on the 9th of that month, for the aggregate price of $356 22.

It recites that said land had been seized and sold " for the payment of taxes due by Mrs. H. P. Montgomery as owner thereof, according to the tableau and assessment rolls, for the years 1872, 1873, 1874 and 1875." The assessment roll of 1875 shows that this property was assessed in the defendant's name. The date of the *dation en paiement* to her bears date the 2d day of April, 1875. The act of confirmation by the Auditor to the purchasers bears the date of 25th of June, 1877, and it contains this recital, to-wit:

"Whereas, the said W. T. Oliver, tax collector, did  *  *  execute and sign a deed or act of sale, transferring unto the said Wiley P. Mangham and Miss M. F. Yarborough  *  *  all of the right, title and interest of said Mrs. H. P. Montgomery, in and to the aforesaid property, etc.,  *  *  I do hereby ratify and confirm said sale, with full and complete title," unto said Mangham and Yarborough, etc.

On the 13th of June previously, Miss Yarborough conveyed her half-interest to her co-owner, Mangham, for the price of $303 56 in cash, the deed reciting that the same was "the amount of her undivided one-half-interest, or half of the price paid at said tax sale, and for which amount the said Mrs. Oliver (Yarborough) "grants full acquittance to said property, so far as she is concerned, or her heirs and assigns, etc."

On the 31st of July following, W. P. Mangham conveyed to Mrs. M. F. Montgomery, the defendant, the whole of said property, *without warranty*, except as to his own acts, and specifying his title to be only such as he acquired at tax sale. The price stated is $450; in cash $300, and in time notes $150.. But in addition to that sum, the act provides that the rents of the years 1877 and 1878, are subrogated and assigned to the vendor, to the extent of $75 for each of those years, and aggregating $150. So it appears that the cash, time notes and rents aggregate $600, or a fraction less than double the amount he paid Miss Yarborough for her one-half interest. This seeming disparity in the figures representing the prices mentioned in those different acts of sale, is easily reconciled, when the items and amounts of taxes specified in the tax sale are examined; for they aggregate the sum of $607 12. Hence $600 is the price mentioned in the act of sale from Mangham to the defendant; and $607 12 is doubtless the price that Mangham and Yarborough paid, at the tax sale, notwithstanding it is stated to have been $356 22; because this last sum is the *exact amount* of the principal of the *State* taxes alone, omitting the items of parish taxes and cost.

The whole of these transactions appear somewhat inscrutable and irregular, but it is clear to our minds that the defendant was tacitly consenting to all that was done, and that all that was done inured to her benefit. That through the tax proceedings and subsequent sales, she was apparently divested of her title to fifteen hundred acres of land for which she paid $2950 only two years before; and thereby she was re-invested with an apparently *new* title for the vile price of $600, that sum being the exact amount she owed the State and parish in taxes; and on account of her default in the payment of which, the land was sent to sale. To our thinking the purpose of the defendant was to procure a clear title to the land, and these tax proceedings were *expected* to accomplish that result.

Under such a state of facts they did not effectuate her purpose, but only served to discharge the taxes she owed and left the title where it was at their incipiency. Beltram vs. Villere, 40th Annual unreported. Southern Reporter, p. —

Such a deed did not convey to the purchasers at the tax sale, nor from

them to the defendant, "an *adverse* right" to that of the plaintiffs in the land. School Directors vs. Edrington 40 Ann. 636.

They did not have the effect of investing her with a new title. In this respect we think the judgment of the lower court is correct, rejecting defendant's, and sustaining the plaintiffs' demands.

### III.

On the question of good faith the controlling articles of the code are the following, viz:

" The possessor in good faith is he who has *just reason* to believe himself the master of thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he *supposes* to belong to the person selling it to him, but which, in fact belongs to another." R. C. C. 3451 (3414).

" He is a *bona fide* possessor, who possesses as owner, by virtue of an act sufficient *in terms* to transfer property, the defects of which he was ignorant of. He ceases to be a *bona fide* possessor from the moment these defects are made known to him, or are declared by a suit instituted for the recovery of the thing by the proprietor." R. C. C. 503 (495).

The determinative factors in the good faith of a purchaser are : 1. His having *just reason* to believe himself the master of thing which he possesses ;" and, second, his possessing "as owner, by virtue of an act sufficient in terms to transfer property, the defects of which he was ignorant."

The article first cited furnishes an example of what is considered by the law-giver as a "just reason," and it is, such a reason as a purchaser entertains "who buys a thing he *supposes* to belong to the person selling it to him." The next article quoted indicates the basis on which the supposition must rest, by stating that a " *bona fide* possessor is one "who possesses as owner by virtue of an act sufficient in terms to transfer property."

In making the purchase of property the purchaser is not *bound* to examine extraneous sources for information in regard to possible defects in the title of his author, in order to be considered a *good faith possessor*, from the *commencement* of his possession.

The code says "it is sufficient if the possession has commenced in good faith." R. C. C. 3482 (3448).

The second paragraph of Article R. C. C. 503 (495) treats of the manner in which good faith is *terminated*, and says it " *ceases* * * from the moment these defects are *made known* to him, *or* are declared to him by a suit."

It does not convey, and was not intended to convey the idea, that the defects of title might be "*made known* to him" from extraneous sources *previous* to his acquisition of the property, and thus deprive him of his good faith at the commencement of his possession. Any one holding a just title and who possesses *animo acquirendi,* is a good faith possessor, because his "*just title*" gives him "just reason to believe himself the master of the thing." Such a just title is one of the elements of a title by prescription. *Possession* of a just title is if continued for a period of ten years another.

Possession under a just title from the *commencement,* gives to the purchaser that good faith which is the third element. These three concurring, the *possessor* becomes absolute owner. The whole question of title by prescription rests upon the purchaser's good faith at the commencement of his possession.

And why should not a possessor be considered in good faith, if he pays a sound price and receives a just title—that is to say, one "which by its nature, is sufficient to transfer property?" R. C. C. 3485.

In the case of Frique vs. Hopkins, 4 N. S. 221, the rule was formulated thus:

"The correct doctrine, we think, is this: that if the title, under which the acquisition is made, be null in itself, from defect of form, or discloses facts which show the person from whom it was acquired has no title, it cannot form the basis of this prescription.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"The sale to him is perfect, in point of form, and discloses no fact which shows the title to be defective. It is not sufficient to deprive the possessor of the right of pleading prescription, that he might by enquiry and careful examination, discover his vendor had no title. If it were, then the law would have no effect, which says the want of title in him who transfers, shall not prevent the party to whom the transfer is made from pleading prescription."

In Dufour vs. Camfranc, 11 O. S. 715, the law applicable to this question was thus very clearly defined and lucidly explained, viz:

"The title presented him is perfect as it respects form; it pursues the very words of the statute; the defect is a *want of right* or *authority* in the sheriff to make such a conveyance, not a defect in the *manner* he made it. As nothing, therefore, appears on the *face* of the deed which is defective, the *knowledge of the want of right, in the person who sold, is not brought home to the vendee, and his error was one of fact and not of law.*" Italics ours.

In the case of Fletcher vs. Cavelier, 4 La. 277, this doctrine was concisely stated thus :

" The titles under which the defendants claim are what the law denominates just titles, and the possessors *must be considered in good faith, unless the reference in the deeds of sale,* to the title under which the conveyance is made, destroys that good faith." Italics ours.

The decision of this court in Giddens vs. Mobley, 37 Ann. 418, rests on these, and other like decisions, and our opinion formulates the rule in this language, viz :

" There cannot be any doubt that the defendants possessed in good faith. The Code defines such possessor to be one who has just reason to believe himself master of the thing which he possesses, although he may not be in fact, R. C. C. 3451 ; and good faith purifies a title of its defects and causes the possessor under a just title to be preferred to the true proprietor, who has remained so long silent and neglectful of his rights." McCloskey vs. Webb, 4 R. 205 ; Hickman vs. Dawson, 35 Ann. 1086 ; Eldridge vs. Tibbets, 5 Ann. 380.

In Carroll vs. Cabaret, 7 O. S. 406, the court said : " There is ne defect *stamped on the face of the deed,* and that is what this court said was meant by valid form in a deed which would enable a holder under it, to prescribe." 37 Ann. 419.

Oriol vs. Moss. 38 Ann. 772, and Hutchinson vs. Jamison, 38 Ann. 153, are to the same effect.

Also Pattison vs. Malony, 38 Ann. 888.

In confirmation of all that has been said on the subject, the Code provides that " the possessor in *bad faith* is he who possesses as master, but who *assumes* that quality when he *well knows* that he has *no title* to the thing, or that his *title* is vicious or defective." R. C. C. 3452. (3415.)

Then we have these two propositions to consider, in determining the good faith of the defendant, Mrs. Montgomery, under the *dation en paiement* from her husband, to wit : First, whether she supposed the property to belong to her husband, at the time he made the title to her ; and second, whether she assumed the quality of owner, when she well knew that she had no title, or that the title he gave her was vicious and defective.

Her title does not appear to be either vicious or defective, and there is no evidence in the record, even tending to show that she had, at the time of her acquisition, any knowledge of the title of her husband. She says as a witness, that when she accepted the title she thought it was perfect, and, prior to that time, never heard its validity questioned. As an evidence of the *bona fides* of her purchase, she set herself to work at

once, to rehabilitate the plantation, by placing thereon, various valuable and expensive improvements, whereby the intrinsic value of same was, admittedly, enhanced to the amount of $2000. Another circumstance of her good faith is, that she accepted title, among other considerations, in satisfaction of her husband's indebtedness to her for a large sum she had loaned him, with which to pay *his vendors* a part of the purchase of the property, and which was secured by a vendor's lien and mortgage thereon, and which was·an obligation of the community, and of the plaintiffs as the simple heirs of their mother.

Counsel for the plaintiffs placed strong reliance on our recent opinion in Heirs of Dohan vs. Murdock, 41 Ann. 494, as supporting his theory of the defendant's legal bad faith. That opinion, although not at hand, may be fairly stated as having decided that the defendant, Murdock, was in bad faith, because the defects in the title of his author were actually made known to him before he acquired title to the property. That theory is easily and perfectly reconciled with the one herein expressed by reference to the case of Fletcher vs. Cavalier, cited, *supra*.

We are of the opinion that the defendant's possession commenced in good faith under the *dation* from her husband in April, 1875 ; but, from what we have already said of the tax proceedings and sale, which were inaugurated and consummated in December, 1876, she was in bad faith thereafter, because the defects in her title had then been made known to her, and from that date she ceased to possess in good faith, and from that date she is liable for rents, which may be safely fixed at $350 per annum, and aggregating the sum of $4550, one-half of which she owes the plaintiffs. But she is entitled on her reconventional demand for the enhanced value of the soil $2000, one-half of which plaintiffs are due her. She is also entitled to be reimbursed one-half the amount of taxes she paid subsequent to her purchase and all she paid in discharge of those due at the date of her acquisition, and whereby the property was encumbered. They amount to $872 50. The subjoined statement gives the several allowances to the parties respectively :

One-half of $4,550 00 rents to plaintiffs ..........                    $2,275 00

      Cr.

One-half of $1,745 00 taxes to defendant.........$  872 50
One-half of $2,000 00 value of improvements..... 1,000 00— 1,872 50

Balance in favor of plaintiffs ..............................$ 402 50

But during the progress of the argument, counsel for plaintiffs conceded that the judgment was perfectly correct in compensating plain-

tiffs' demands for rents, with those of defendant for improvements and taxes, and filed an answer praying its affirmance, hence his clients are precluded from asserting any claim to the difference.

This judgment does substantial justice between the parties, and it is therefore affirmed.