185 La. 204

**RUTH v. BUWE et al.**

No. 33327.

Supreme Court of Louisiana.

May 25, 1936.

John J. Kenny and Quintero & Ritter, all of New Orleans, for plaintiff.

Edward M. Heath, of New Orleans, for defendants.

HIGGINS, Justice.

This is a petitory action in which the plaintiff seeks to be recognized as the owner of a certain lot of ground and, as such, entitled to the full and undisturbed possession thereof, and to have the defendants ordered to deliver possession thereof to him, and to pay him rent for the use and occupancy of the property.

The father, appearing individually and as natural tutor of his minor children, answered, denying plaintiff's right to claim ownership, and averred that plaintiff had verbally agreed to sell the lot in controversy to Mrs. Buwe, deceased wife and mother, respectively, for the sum of $300, on ac-

count of which she paid the sum of $50 cash, and that they be decreed to be the owners of the lot, upon paying the balance due of $250.

In the alternative and in reconvention, defendants alleged that, relying upon the verbal agreement and induced by the conduct of the plaintiff and his wife in treating their mother as the owner of the lot, she, with her separate and paraphernal funds, placed a $3,000 five-room dwelling on the lot, which has a value of about $300; that she filled the lot at a cost of $385, placed concrete paving around the building at a cost of $45, erected fences at an expenditure of $28, and paid taxes on the whole of the property for a number of years, totaling $304.88; that the buildings and improvements were placed on the lot with the consent, approval, and knowledge of the plaintiff; that, when defendants' mother and father were not living in the property, she rented it to third persons, who paid the rent to the plaintiff's wife and she, in turn, remitted it to defendants' mother; and that, because of the conduct of the plaintiff and his wife in consistently recognizing and treating their mother as owner of the property for about twenty-six years, defendants were possessors in good faith and entitled to be reimbursed by the plaintiff for the value of the materials and price of workmanship for the improvements thereon, or a sum equal to the enhanced value of the land as a result of the improvements.

On the trial of the case, plaintiff introduced an authentic act of sale, showing that he purchased the property on May 8, 1903, and a certificate of the registrar of conveyances, showing that he had never alienated the lot, and, as defendants had admitted they had possession of the property, plaintiff rested his case. Plaintiff then objected to defendant introducing any parol evidence for the purpose of establishing title to the lot, which objection was sustained and defendants then abandoned their claim to the lot, and urged only their alternative demands as possessors in good faith.

There was judgment in favor of the plaintiff, recognizing him as owner and ordering defendants to deliver possession to him, and in favor of the defendants on their reconventional demand for the sum of $300, and both parties appealed.

The first issue to be determined is whether or not the defendants are possessors in good faith—plaintiff contending that they were not and defendants asserting that they were.

The record shows that the plaintiff and the father of the defendants married two sisters, who were devoted to each other; that in 1903, the plaintiff purchased three lots of ground on Orleans street; that he erected his home on one of the lots and some time later his sister-in-law, mother of the defendants, expressed a desire to build a home on lot 8, the lot adjoining plaintiff's home; that according to plaintiff's version, he granted permission to his sister-in-law and brother-in-law to build on the ground, and assisted them in erecting a five-room dwelling, which cost about $950, on lot 8, but that he did not agree to sell it to them; that according to the defendants' version, their mother entered into a verbal agreement with the plaintiff to purchase the lot from him for the sum of $300, $50 cash and $250 credit, but this evidence was excluded by the trial judge on the ground that defendants could not prove title to immovable property by parol testimony, except by facts and articles, which was not done, and defendants conceded this ruling to be correct; that defendants' mother and father further improved the property, with the permission and consent of the plaintiff; that the lot and improvements thereon were assessed in the name of their father for about seventeen years at $600, and defendants produced tax receipts showing payment of the city and state taxes on the property by their parents from 1923 through 1927, both inclusive, amounting to the sum of $106.54; that for several years, while defendants were living in Baton Rouge, due to their mother's ill health, the property was rented to third persons, who paid the rent to plaintiff's wife and she, in turn, with plaintiff's consent, remitted it to defendants' mother at Baton Rouge; that the property was sold for the unpaid city taxes of 1922; that, while defendants claimed they furnished the money for the redemption of lot 8, the redemption sale from the tax purchaser was executed in favor of the plaintiff on March 24, 1924, recorded in C.O.B. 374, Fol. 119, and he claims he paid for the redemption; that in the early part of 1923, Mrs. Buwe, mother of defendants, died and her succession was opened and defendants were recognized as the heirs, and the father was appointed as natural tutor of his minor children; that on February 2, 1923, plaintiff instituted a petitory action against Nicholas Buwe, the father of the defendants, in the

civil district court for the parish of Orleans, where the present and identical action was also brought, but, having allowed five years to elapse without taking any further steps in the proceedings, the defendant had the suit dismissed. The present suit was instituted on February 2, 1933.

Articles 503, 3451, and 3452 of the Revised Civil Code read, respectively, as follows:

"503. He is bona fide possessor who possesses as owner by virtue of an act sufficient in terms to transfer property, the defects of which he was ignorant of. He ceases to be a bona fide possessor from the moment these defects are made known to him, or are declared to him by a suit instituted for the recovery of the thing by the owner."

"3451. The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another."

"3452. The possessor in bad faith is he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective."

In the case of Kees et al. v. Louisiana Central Lumber Co. et al., 183 La. 111, 162 So. 817, we held that, in order to constitute possession in good faith under which a prescriptive title might be acquired, the possessor had to occupy the property by virtue of a title valid in form and acquired from one whom he believed to be the owner of the property.

In the case of Alexius v. Oertling, 13 Orleans App. 216, at page 217, the court said:

"Defendant went upon land belonging to plaintiff with permission from plaintiff to occupy the land as long as he pleased; and without objection from plaintiff, he erected thereon, at his own expense, such improvements as he saw fit.

"Thereafter plaintiff sought to re-enter the land, but defendant sued out an injunction; which injunction was eventually dissolved after a trial on the merits.

"Plaintiff now claims attorney's fees for dissolving said injunction, and compensation for the use of the land during the pendency of the injunction. Defendant claims in reconvention the value of his improvements.

"I. As defendant was a mere licensee or 'tenant at will' his refusal to surrender the premises on demand made him a trespasser thence forward; and accordingly he owes compensation for the use of the land from that time on. Plaintiff claimed and the trial Judge allowed $20; and this appears to us a proper compensation. * * *

"Defendant is not entitled to the value of his improvements. He is not a 'possessor in good faith,' for the sole reason that he is not a possessor at all. For those only are possessors who hold . for themselves believing themselves owners. C.C., 3441. The term 'possessor in good faith' is purely technical, and has no application to one who acknowledges another owner than himself. (C.C., 3441).

"And none but possessors in good faith, in this technical sense, can compel the owner to reimburse the value of improvements placed upon the land. C.C., 508.

"It is therefore ordered that the judgment appealed from be amended by reducing the amount allowed plaintiff from ninety-five dollars ($95.00) to twenty dollars ($20), and as thus amended, it is affirmed; plaintiff to pay costs of appeal and defendant the costs of the Court below. * * *

"Per Curiam. There is no occasion for any reservation of rights herein. They are regulated by C.C., 508. Alexius must elect whether he will keep the improvements or have them removed. If he elects to keep them he must pay their value as the law requires."

The above case was quoted with approval and followed by this court in Hammonds v. Buzbee et al., 170 La. 573, 128 So. 520.

■■ Defendants were not in possession of the lot under a title valid in form, or an act sufficient in terms to transfer property, in fact, they had no title at all, because, under the law, one cannot prove title to immovable property by parol evidence, except by facts and articles, which procedure was not resorted to here. Defendants and their parents may have been serious in their belief that they were the owners of the property, but a misconception of the law, no matter how honest, cannot have the effect of making them possessors in good faith, because they had no title valid in form or an act sufficient in terms to transfer the property as required by the articles of the Civil Code above quoted and the decisions interpreting them. Heirs of Dohan v. Murdock, 41 La.Ann. 494, 6 So. 131; McDade et al. v. Bossier Levee Board, 109 La. 625, 33 So. 628; Southwestern Gas & Electric Co. v. Nowlin, 164 La. 1044, 115 So. 140; Breaux-

Renoudet Cypress Lumber Co. v. H. H. Shadel et al., 52 La.Ann. 2094, 28 So. 292; Bradford v. Cook, Tutor, 4 La.Ann. 229; Fleming v. Singletary, 8 La.App. 417; Fox v. Succession of Broussard, 161 La. 949, 109 So. 773; Lindner et al. v. Cotonio, 175 La. 352, 143 So. 286, and Bauduc v. Conrey, 10 Rob. 466, 473.

Furthermore, defendants in any event became possessors in bad faith on February 2, 1933, when the present suit was instituted against them. Montgomery v. Whitfield, 41 La.Ann. 649, 6 So. 224; Nabors Oil & Gas Co. v. Louisiana Oil Ref. Co., 151 La. 361, 91 So. 765; Roussel v. Railways Realty Co., 165 La. 536, 115 So. 742.

Having concluded that the defendants were not possessors in good faith within the meaning of the law, they have no right under article 508, Rev.Civ.Code, to compel plaintiff to chose between reimbursing them for the value of the materials and price of workmanship of the improvements placed on the property, or reimbursing them in a sum equal to the enhanced value of the "soil." Since they are not possessors in good faith, plaintiff has a right to compel them to remove the improvements from the lot.

Plaintiff, on the trial of the case below, made it clear that he made no claim to the improvements situated on the lot and elected not to accept them. Therefore, he cannot be compelled to pay for them.

Plaintiff claims rent for the use of his property. In Saunders' Lectures on the Civil Code, p. 164, he points out that this rent is allowed not as the result of a contract, but in the nature of a penalty against the possessor of the land not in good faith.

In the instant case, the plaintiff admits that he "turned the property over to the defendant, Mr. Buwe," in order that he might erect a residence thereon, and that he had no intention of charging them rent for the occupancy of the property. He, therefore, cannot charge them rent for the use of the land, until he demanded the possession of the property and the defendants refused to yield it to him. We do not think that the date of the first suit filed by plaintiff on February 2, 1923, should be the date from which the rent should commence, because, under the law, he abandoned that suit by failing to prosecute it for more than five years after it was filed.

Thereafter, the record fails to show that he did anything to obtain possession of the property from the defendants. We shall, therefore, consider that the defendants were occupants of the property, in accordance with the plaintiff's original grant of possession, until the instant suit was filed on February 2, 1933.

Plaintiff is not entitled to rent for the improvements on the property, but only for the use of the land. Alexius v. Oertling, supra.

It was shown that the lot 8 in question was low and the defendants' parents spent $385 in filling it, in order that a residence could be erected thereon, in addition to $45 for concrete walks and $28 for fences. The record shows that defendants' parents received $11 per month from tenants who occupied the whole of the property for seven years. The evidence further shows that defendants value the lot at $300 and the plaintiff values the improvements at $900. Using these figures, and taking into consideration the costs of filling and fencing the lot and laying concrete walks, as well as the other facts and circumstances in the case, we believe $1.50 per month would be a reasonable charge for the use and occupancy of the lot of ground. The suit was filed on February 2, 1933, and thereafter defendants were possessors in bad faith, in legal contemplation, from that date to the present time, or for approximately three years and four months, or a total of forty months.

In connection with the reconventional demand, we observe that the filling and paved walks are improvements which cannot be removed, and, as defendants are possessors in bad faith, they are not entitled to recover therefor. Roussel v. Railways Realty Co., supra; Davidson v. McDonald et al., 131 La. 1047, 1053, 60 So. 679.

Defendants introduced in evidence tax receipts for city and state taxes for the years 1923 through 1928, both inclusive, showing that they spent $106.54. Taking again, as a basis for proration, the sum of $300 for the value of the lot and $900 for the value of the improvements, and considering that both were assessed for $600, we shall conclude that the lot was assessed for $150 and the improvements for $450. Defendants, as owners of the improvements, are not entitled to recover for the taxes assessed against them. They are entitled to recover the taxes paid on the lot

alone. Roussel v. Railways Realty Co., supra. The pro rata of taxes due defendants would be one-fourth of $106.54 or $26.63, which defendants are entitled to have credited as an offset against the $60 allowed plaintiff for rent.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from is amended by granting judgment in favor of the plaintiff and against the defendants for the sum of $60 for rent for the use and occupancy of the property.

It is further ordered that the judgment be amended by ordering and directing the defendants to remove the improvements, other than the concrete paving and the filling, situated on lot 8, within six months from the date this judgment becomes final; defendants to pay rent for the use of the lot on the basis of $1.50 per month during that period, until the improvements are removed.

It is further ordered, adjudged, and decreed that the judgment be amended by reducing the amount allowed defendants on the reconventional demand from $300 to $26.63, which amount defendants are entitled to compensate and to set off against the plaintiff's claim of $60, thus leaving a balance due in favor of the plaintiff of $33.37, and, as thus amended, the judgment is affirmed, at defendants' costs.

O'NIELL, C. J., absent.