Hickman et al. vs. Dawson et al.

No. 8214.

THOMAS J. HICKMAN ET AL. VS. MARY P. DAWSON ET AL.

A legal assessment is essential to the validity of a tax sale, and where that is wanting the sale will not be protected by the prescription of two, three and five years. Such sale, however, being made by competent authority, where no nullity is patent on the face of the deed, the purchaser cannot be held a purchaser in bad faith, but is entitled to be reimbursed the legal taxes paid, and for useful improvements. Previous decisions reaffirmed.
Parol evidence is inadmissible to prove the assessment and payment of a special tax, where it is not shown that there exists no written evidence of said facts.

APPEAL from the Eleventh District Court, Parish of Natchitoches. Pierson, J.

*Chaplin, Drauguet & Chaplin* for Plaintiffs and Appellants.

*Watkins & Scarborough* for Defendants and Appellants.

The opinion of the Court was delivered by

TODD, J. This is a petitory action instituted by the plaintiffs, as heirs of Mrs. M. E. Blanchard, for the recovery of the plantation described in their petition, situated in the Parish of Natchitoches, known as the Gaiennie plantation.

The defendants oppose to their demand a tax sale of the property, made in July, 1872, to Dr. Thomas H. Patterson, under whom they claim.

There have been two trials of the case in the District Court, and this is the second appeal to this Court. In the first trial the District Judge excluded evidence impeaching the tax title referred to, and rendered judgment for the defendants. The judgment was reversed and the case remanded for another trial, this Court holding that the excluded evidence should have been admitted. On the second trial there was judgment decreeing plaintiffs owners of the land, setting aside the tax sale, but allowing the defendants the value of the improvements made on the property, and the legal taxes paid by Patterson at the time of the sale, and since by defendants during their possession. From this judgment both parties have appealed.

1. The property in controversy belonged to the succession of Marie Emma Blanchard when sold at tax sale at the date mentioned, and the plaintiffs are her legal heirs.

Many nullities were urged against the tax sale. It is only necessary to notice one of them.

Though the property belonged to the succession of Mrs. Marie Emma Blanchard, as stated, it was never so assessed. In fact, it does not appear to have ever been assessed to her whilst living, though she

owned the property from 1860, having acquired it at probate sale of her father's estate. During her lifetime the plantation in question was assessed to Mrs. E. A. Blanchard, and was thus advertised to be sold, though the tax collector's deed stated that it was sold as the property of the estate of Mrs. E. A. Blanchard.

Under this state of facts it is manifest that such an assessment was equivalent to no assessment at all, and that the plantation in controversy, then the property of Mrs. Marie Emma Blanchard's succession, was sold virtually without any assessment whatever. Stafford vs. Twitchell, 33 An. 526.

Such a sale is not protected by the prescription pleaded, by reason of this radical defect: the want of a legal assessment. This question of prescription was really determined when the case was before us on the first appeal, and this was in conformity to prior adjudications of this Court. 15 An. 15; 32 An. 912.

The defendants, however, charge that this omission to. assess the property against the true owner and the error in the name, was through the fault of the agents of Mrs. M. E. Blanchard, and for this reason cannot be invoked to invalidate the sale; and cites the case of Lane vs. Succession of Mauh, 33 An. 587, in support of the proposition.

It is sufficient reply to this to say, that the evidence in the record does not show the alleged agents were in any manner responsible for the omission to assess to the true owner, or for any mistake or error in the name of the owner. There is no act proved on their part to establish such responsibility, and, in fact, we find no proof of any such agency, or of any authority on the part of the alleged agents to represent Mrs. Blanchard in any respect or for any purpose whatever.

2. Whilst the tax sale must be held a nullity for the want of this essential requirement, yet the sale having been made by competent authority and it having been held by this Court in the first appeal, quoting the language of that decision, "that the defects or elements of nullity charged against the tax deed are *not patent* on its face," we conclude, in accordance with several adjudications of this Court on the same question, that the purchaser at the said sale was a possessor in good faith and entitled to be reimbursed for useful improvements on the property, and legal taxes paid by him. Miller vs. Montague, 32 An. 1293; Guidry vs. Broussard, 32 An. 924; Stafford vs. Twitchell, 33 An. 520; Hopkins vs. Daunoy, 33 An. 1124; Eldridge vs. Tibbits, 5 An. 380; Wederstrandt vs. Freyhan, 34 An. 705.

3. As to improvements.

The question as to the value of the improvements on the property,

under the conflicting testimony on the subject, we have found it no easy task to solve.

As stated, the Gaiennie Plantation, in controversy, was purchased by Mrs. Blanchard in 1860, at the sale of the property belonging to the succession of her father, for $51,000. The amount of her interest was $17,000, and for the residue of the price she gave her promissory notes to the co-heirs, which, after the war, in 1866, were reduced, but were never paid. She occupied the property for about one year and a half or two years, in 1862 and 1863, and then abandoned it, and never again occupied it up to her death. After she left the plantation it was exposed, during the late war, to the depredations of both armies. The buildings, fences, etc., were almost totally destroyed, so that at the termination of the war, the property was almost a complete wreck, and so remained, with the exception of a small enclosure and a few patches cultivated up to the tax sale. It was sold for the taxes of 1867, 1868, 1869, 1870 and 1871, and bought in by T. H. Patterson on the 6th July, 1872, for $4,218.80, under whom the present possessors, defendants, hold.

The improvements made on the property, after the purchase, were considerable and of a substantial character, consisting of a dwelling house, ginhouse, with steam engine and other fixtures, cabins, stables, about four miles of plank fencing, enclosing several hundred acres in cultivation.

These improvements were appraised by three persons, represented as being intelligent gentlemen of the neighborhood, planters and merchants, at $10,130.

We quote from the testimony of one of these witnesses, to give an idea of the character of the improvements, and the witness' capacity and opportunities for estimating their value:

"I was aware of the condition of the place at the time of the tax sale. It was then in a very bad condition. There was very little land fenced in, and the houses in a bad fix. There was no ginhouse or residence on the place; both had been destroyed. Hardly forty acres were under fence at that time. *   *   I know the condition of the place now. *   *   We examined the buidings and improvements enumerated in the bill of particulars. *   *   Have lived in the neighborhood since 1853, being a merchant and planter. I have experience in business as merchant and planter, and am well acquainted with the value of improvements and repairs, having had a great deal done on my own plantation. Have had improvements of a similar character made on my place, and make the estimates from my own knowledge and experience."

The other appraisers, we gather from the evidence, were men of like

experience, and possessed equal facilities for appraising the property. On the contrary, we find an estimate in the record by two workmen who built some of the houses, of $4,331.50, which embraces the same improvements, less the ginhouse, machinery, etc., which were valued by the first named appraisers at $3,200.

The Judge *a quo*, who had the case under advisement for some time, and doubtless gave the evidence the most thorough consideration and upon knowledge of the witnesses testifying before him in open court, afforded him an opportunity of weighing the evidence and forming a conclusion touching the value of the improvements which this Court does not possess, adopted the estimate made by the three witnesses first mentioned, deducting therefrom $800 for the ginhouse, which had been partially destroyed by a storm. We cannot say that the Judge erred in his conclusion. Our own examination of the evidence rather confirms us in its correctness.

4. Taxes.

There is a wide difference between counsel of the parties respecting the amount of taxes due on the property before and subsequent to the tax sale; and there is evidence in the record, documentary and oral, to sustain, to some extent, the respective opinions of each. We have the regular assessment rolls, the delinquent lists, and testimony of experts, none of them in exact accord and making it difficult to arrive at a satisfactory conclusion. The discrepancy between the assessment rolls and the delinquent lists is owing to the fact that, in the former, some of the taxes are not carried out or extended in the roll, which is done and appear on the latter.

With a view to ascertain the amount of the taxes for all these years, from 1867 to 1881, inclusive, an expert was appointed by the Judge, with consent of both parties, to compile and report a statement of the taxes from the evidence in the case. This expert had been in the tax collector's office since 1868, and is the present tax collector. Another statement or compilation of the taxes appears in the record from another party who, for many years, was the tax collector or deputy tax collector for the parish, and whose testimony on the subject was also taken. We think both statements are properly in evidence, although the right of one of them to appear in the record is questioned.

From these statements the conclusions of the Judge *a quo* are evidently largely drawn, but the aggregate reached by him is not as large as the total amount of the taxes shown by either statement referred to. All penalties and costs were wholly excluded from the Judge's calculation, as appears from a memorandum of his opinion on file. He also

137

reduced the Parish tax for the year 1872 to 1876, inclusive, to conform to the State tax for those years under the decisions. 29 An. 1 ; 33 An. 490.

In reviewing the Judge's statement on this point, we can detect but one error, and that was in relation to the special parish taxes for 1872 and 1873, aggregating for both years $1,469.70. There is no evidence whatever of any assessment of this tax, or any authority for its collection, except the testimony of the ex-tax collector, which was objected to on the ground that it was not the best evidence of the assessment and payment of the tax, which objection should have been sustained and the testimony on that point rejected. Cooley on Taxation, 28-45.

5.　Rents.

There is much conflicting testimony respecting the value of the rents and revenues of the property. The Judge properly allowed the plaintiffs to recover the rent only from judicial demand. He fixed it at $750 per annum, for 1879 to 1882, inclusive, for the rent of the plantation on the left bank of the river, aggregating $3,750 for those years, and in addition thereto, $325, for two years' rent of the right bank. We think the estimate a liberal one, and of which the plaintiffs have no right to complain.

The Judge, also, very properly allowed the plaintiffs a credit of $300 for old rails and brick on the place, used by the defendants.

This completes our review of all maters embraced in this appeal. On account of the voluminous record, and the great mass of unsatisfactory and conflicting testimony, an examination of the case has occupied much time, but it has been thorough and exhaustive, and the conclusion we have reached, we believe, does substantial justice between the parties.

The judgment of the lower court allowed the defendants $11,364.58, on their reconventional demand for improvements, taxes, etc., after giving the plaintiff credit for rents, etc. This balance should be reduced by $1,469.70, the amount of the special tax we find improperly charged against plaintiffs, as above stated, which should have been rejected as of non-suit, leaving the true balance against them, $9,894.88.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be amended by decreeing the balance due by plaintiffs on the reconventional demand to be nine thousand eight hundred and ninety-four dollars and eighty-eight cents, with legal interest from date of judgment of District Court, and for the difference between this amount and that awarded by the judgment of the lower court, this difference being $1,469.70, the right of action is reserved, and the judgment, as thus amended, affirmed, defendants to pay costs of appeal.

Manning, J., takes no part.