## No. 14,096.

## L. S. GAUTHIER vs. F. S. CASON, *et als.*

### SYLLABUS.

1. Where a person's property is seized by the sheriff in execution of a *fi. fa.*, the owner's possession is broken and replaced by that of the sheriff. It is the sheriff who, thereafter, holds possession of the property for delivery to the purchaser at the subsequent judicial sale. The owner's possession being broken after a judicial sale to another, he stands as a third person to the property.

2. Where the same property is afterwards sold at a tax sale under an assessment made in the name of the purchaser at the execution sale, there is no legal reason why the original owner should not hold possession under and for the tax purchaser, nor why he should not later purchase it from him and own and possess it for himself. Under such circumstances, his title would be a new title, and he could, for purposes of prescription, tack on his author's possession to his own.

3. Where, under the pleadings, the purchaser of property at a tax sale is admittedly in good faith up to citation upon him in a petitory action, prescription *acquiredi causa* runds in his favor and those holding under him from the date of the tax sale.

APPEAL from the Twenty-Fifth Judicial District, Parish of Tangipahoa—*Reid, J.*

*E. North Cullom, Bolivar E. Kemp, Thomas Kleinpeter, Thomas H. Thorpe,* and *Andrew Jackson Morgan,* for Plaintiff, Appellant.

*Stephen D. Ellis,* for Defendants, Appellees.

## STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J.　On the 7th of February, 1885, the Sheriff of the Parish of Tangipahoa, through one of his deputies, adjudicated to the plaintiff, L. S. Gauthier, in execution of a judgment he had obtained against Thomas Calmes, property described in the sheriff's return and sheriff's deed of sale, as the S. E. 1-4 of S. E. 1-4 of Section 14 T. 5, S. of R. 7 E., containing 39 78-100 acres, also N. W. 1-4 of N. E. 1-4 of Section 23, T. 5, S. of R. 7 E., containing 9.59 acres, also W. 1-2 of S. W. 1-4 and Frac. S. W. 1-4 of N. W. of Sec. 13, T. 5 S. of R. 7 E., also 40 acres known as the Dr. Lea tract in Sec. 14, T. 5, S. R. 7 E., in the Greensburg Land District of Louisiana, containing 128 33-100 acres, together with all the buildings and improvements thereon, "for price of *Four Hundred Dollars.*"

The sheriff's return was recorded in the sheriff's book of sales on the 17tu of February, 1885, in the sheriff's book of sales in the clerk's office of Tangipahoa on the 19th of February, 1885, and in the conveyance book of the Records of the Parish of Tangipahoa on March 20, 1896.

The plaintiff in his petition in this suit avers himself to be still the owner of the property adjudicated to him.　He avers that the forty-acre tract referred to as the tract known as the Dr. Lea tract was the N. E. 1-4 of the N. E. 1-4 of Sec. 23, in T. 5, S. R. 7, E., but was erroneously described in the sheriff's deed to petitioner as being in Section 14 (Four-teen), that his said property was correctly described in the assessment rolls of the Parish of Tangipahoa.　He avers that the said tract containing 128 33-100 acres was entered by N. B. Calmes on March 19th, 1855.　That the forty-acre tract known as the Dr. Lea tract was purchased of him by N. B. Calmes and subsequently purchased on 21 April, 1883, by Thomas Calmes, at a sale for taxes; that said lands were assessed for the years 1883 and 1884 in the name of Thomas Calmes, for the years 1885 and 1886 and 1887 in the name of petitioner.

That he paid the State and parish taxes assessed upon said lands for the years 1884, 1885 and 1886.

That he was, to the knowledge of the sheriff and tax collector, in and for said parish, domiciled at Choupique, his post office being a'. Cottonport, in the Parish of Avoyelles, State of Louisiana, during all of said years, and also in 1888, therefore he was not an unknown person in legal intendment and whose residence was unknown to said officer.

That on the 16th day of June, 1888, F. P. Mix, sheriff and *ex-officio* tax collector of the Parish of Tangipahoa, deeded the folowing described pieces of land, situated in said parish, describing them as belonging to petitioner, to-wit:

128 acres of land 39 acres S. E. 1-4 section 14, T. 5, R. 7 E., 9 39-100 acres N. W. 1-4 of N. E. 1-4 Sec. 23, T. 5, R. 7 E., and W. 1-2 of S. W. 1-4 of fractional S. W. of N. W. 1-4 Sec. 13, T. 5, R. 7 E., also 40 acres, the Dr. Lea tract, in Section 14, T. 5, R. 7 E., unto F. S. Cason, of said parish, for the State and parish taxes of 1887, amounting, together with interest and costs, to the sum of $15 19-100, without notice of any kind to petitioner.

He alleges that he had no agent or attorney authorized to represent him in said parish to whom notice could have been given, and that previously to 1888 he attended to his business there himself.

That Section 22 of the Act of 1888 prescribes the required time for listing and for estimating the valuation of all real and personal property and fixes it to be done on or before the first day of June of each year. It provides that the assessor should give notice by publication in some newspaper, published in the parish for ten days, that the listing of the property has been completed and the estimated valuation made thereon by the assessor, and that the same would be exposed in the office of the assessor for a term of twenty days, beginning next after the ten days required for notice shall have expired. He avers that the sale made to F. S. Cason, complained of having been made on the 16th of June, 1888, was made before the expiration of the prescribed time of which he had no notice by publication in a newspaper or otherwise. That as the sale was made on the 16th of June, the listing and valuation of the property of the assessor must have been completed on the 17th of May, next preceding that date. That the sheriff in his *proces*

*verbal* says he advertised the property first on the 26th of May, and it follows that the listing and valuation of it must, under the law, have been completed and exposed as early as the 17th of April of said year, supposing that not a day was lost *ad interim*. The board of reviewers did not meet until the first Monday of July following; that petitioner had no notice either of the completion of the listing of the property or of the appointed time for the sale or of the work of the reviewers. He avers that the description of the landed property published by the said sheriff and *ex-officio* tax collector, was incorrect, and not such as was required to be published; for instance, he advertised 128 acres without giving any description; 39 58-100 acres in S. E. 1-4 Sec. T. 5, S. R. 7, E., whereas the lands of petitioner contains 39 78-100 acres. The 128 acres mentioned in the sheriff's advertisement and *proces verbal* to Cason, should have been described as the N. E. 1-4 of the N. E. 1-4 of Section 23, and not Section 14 in T. 5, R. 7, E., and it should have been described as containing 128 33-100 instead of 128 acres, with no description otherwise. The Lea tract, sold by the sheriff to said Cason, as aforesaid, he failed to describe at all, further than to say: "Also forty acres, the Lea tract, in Sec. 14, T. 5, R. 7," whereas the said land of petitioner lies in the N. E. 1-4 of N. E. 1-4 of Section 23 in T. 5, S. R. 7, E., all of which appears by an entry made by N. B. Calmes March 19th, 1855, bearing the number 2179 in the United States Land Office.

That said tract was sold for State and parish taxes by F. P. Mix, Sheriff of Tangipahoa parish, ex-officio tax collector, on the 21st of April, 1883, Thomas Calmes becoming the adjudicatee and he being petitioner's author.

Plaintiff avers that the sheriff sold said lands as advertised by him *in globo,* whereas the law required such sales to be made by the sheriff in such manner as to make each tract of listed land, pay the tax on it and not any other tax. That as the police jury, sitting as a board of reviewers, could not, under the law, have officiated as such before the first Monday of July, the tax collector had not the authority or power to sell land for taxes until that work had been done and notices given. That, therefore, the sale to Cason was null *ab initio* and *in toto,* and in no respect operated a divestiture of petitioner's title thereto as the owner of the land claimed.

That he tenders unto the said Cason, adjudicatee of said lands, the

sum of $15 90-100, paid by him to the tax collector, and twenty per cent thereon, with costs, interest and penalties, notwithstanding the fact that the deed to him from the tax collector embraces and includes only a small portion of his land as would appear by reference to the respective titles annexed to his petition.

That Cason and his successors in title are occupying and claiming as owners all of petitioner's land, as first described, contrary to law, and in violation of petitioner's rights.

That Cason sold, or pretended to sell, the land so acquired at tax sale to Mrs. Mary Calmes, April 25th, 1893; that the land was at the time of filing his petition occupied by Dallas Calmes and Mrs. Mary Calmes.

He prayed that S. F. Cason, Mrs. Mary Calmes, and Dallas Calmes be cited, that petitioner have judgment decreeing him to be the owner of the N. E. 1-4 of Section 23, in Township 5, S. R. 7, E., also 39 78-100 acres, being the S. E. 1-4 of S. E. 1-4 of S. E. 1-4, Sec. 14, T. 5, S. R. 7, E., also the N. W. 1-4 of N. E. 1-4 of Section 23, T, 5, S. R. 7, E., containing 9 59-100, also W. 1-2 of S. W. 1-4 and fractional S. W, 1-4 of N. W. 1-4 of Sec. 13, T. 5, S. R. 7, E., said tract aggregating two hundred and fifty-six and 66-100 acres, and being the identical tract purchased and adjudicated to petitioner by the sheriff of the Parish of Tangipahoa on the 21st of April, 1883, in satisfaction of his judgment against Thomas Calmes. Petitioner further prayed for rents, averring the possession of the defendants to have been in bad faith. S. F. Cason answered. After pleading the general issue he admitted that he purchased the lands firstly described in plaintiff's petition at tax sale, made by the sheriff and tax collector, on the 16th of June, 1888, for the unpaid taxes, due by the plaintiff, for the year 1887, and that title to same was made to him by F. P. Mix, the then sheriff and tax collector, and same was duly recorded in the conveyance book of the Parish of Tangipahoa. He averred that under said title he at once took possession of said lands and had same in peaceable and open possession until April 26, 1893, when he sold the same to Mrs. Mary Calmes, by private act, acknowledged before J. A. Reid, and duly recorded in the conveyance records of the Parish of Tangipahoa.

He admitted that he paid the price for said land as stated by the plaintiff, and averred that he paid the taxes on the property for the years 1889, 1890, 1891 and 1892, amounting in the aggregate to Ten Dollars.

He denied that any of the legal formalities were neglected by the sheriff and tax collector leading up to said tax sale, and maintained that said sale was made in strict conformity to law, and same is valid and good.

He pleaded the prescription of two and three years as a peremptory bar to plaintiff's right of action. He contingently prayed in recon-vention for judgment against the plaintiff for the purchase price and taxes since paid and for interest thereon.

Mrs. Mary Calmes answered, first pleading a general denial. She admitted that she was in possession of the property, firstly described in plaintiff's petition, she averred that she purchased the same from F. S. Cason on April 25, 1893, by private act acknowledged before J. A. Reid, notary public, and same was duly recorded in Tangipahoa parish in the conveyance office, that Cason acquired the same at tax sale, as recited in his answer, the allegations of which she adopted and made part of her own answer. She denied that plaintiff was then or ever had been the owner of the North East quarter of Section 23, Township 5, South Range Seven, East. She averred that she purchased said land from N. B. Calmes by private act, which she annexed, and same was acknowledged before J. A. Reid, on the 26th of April, 1893, and said act was duly recorded on May 22, 1893, in the conveyance book of Tangipahoa Parish.

She averred that she possessed said lands for S. F. Cason from June 16, 1888, until April 25, 1893, when she became owner as stated. That she had been in the open, undisputed, peaceable and quiet possession, she and her vendor, for more than ten years, and she specially pleaded the prescription of two, three, five and ten years as a peremptory bar to plaintiff's right to recover.

She averred that she had, in good faith, put up a number of valuable buildings on the property, and had made permanent valuable improve-ments thereon and thereto. She prays that plaintiff's demand be rejec'd d, and that she be decreed to be the owner of the land bought by her from S. F. Cason, and also the North East quarter of North East quarter of Section Twenty-three, Township Five, South of Range Seven, East. She prayed contingently in reconvention for the value of her improvements, and that no possession be given to plaintiff until said judgment should be paid.

The District Court rendered judgment in favor of the defendant, rejecting plaintiff's demand, and he appealed.

OPINION.

NICHOLLS, C. J.   Plaintiff's action is a petitory one, directed against Dallas Calmes and Mrs. Mary Calmes as defendants in possession.

He bases his right of ownership upon a judicial sale made in execution of a judgment which he had obtained against Thomas J. Calmes, at which sale he became the adjudicatee.   He refers in his petition to a tax sale, made of the property in 1888, by F. P. Mix, sheriff and ex-officio tax collector of Tangipahoa Parish, in enforcement of taxes of 1887, assessed against the property in his name, at which it was adjudicated to S. F. Cason, and who subsequently transferred the same to his mother-in-law, Mrs. Mary E. Calmes.   He avers that for a number of reasons recited that the sale to Cason was null and void *ab initio*, and did not divest him of his ownership.

He prayed that S. F. Cason, Mrs. Mary E. Calmes, and Dallas Calmes be cited; that he be decreed owner of the property, which he declared to be the identical property adjudicated to him at the sheriff's sale, and he further prayed judgment of Cason and each other of said parties in possession of his said lands, from the service of his petition, for the rents thereof at the rate of five dollars per acre, until they give up said lands, their possession of same being possession in bad faith, if continued after service of citation.

Mrs. Mary Calmes is the widow of Thomas J. Calmes, against whom the plaintiff, Gauthier, had obtained and executed judgment.   Plaintiff therefore is committed, so far as he is concerned, to the ownership of the property he claims having been originally in Thomas J. Calmes, and that he, plaintiff, divested him of that ownership through the execution sale at which he purchased.   It appears that the plaintiff never took possession corporeally of the land he alleged to have purchased after the adjudication to him, though he paid taxes upon it for several years.

Mrs. Mary Calmes seems to have been living on the place at the time of the sale, and has never left it.   While she may have been there on sufferance, there is nothing to show that her occupation was by consent or agreement. Where her husband was at the time does not appear. The property was adjudicated in 1888 to S. F. Cason, at tax sale.   He notified Mrs. Calmes of his purchase, and from that time forward, up to 1893, when he conveyed the property to her, she held the property for him, and from that time forward for herself.   There was no legal obstacle after Cason became the adjudicatee at the tax sale, in his tak-

ing immediate possession, and no legal obstacle after Cason became the adjudicatee, in Mrs. Calmes holding possession, for him thereafter. If Gauthier became the owner of the property, it was not through a conventional sale, and Calmes and his wife were under no legal obligation to hold the property for delivery to him.

They became third parties as to the property from the time of the adjudication, and charged with no duty to Gauthier, Cason had no connection whatever with him. He could legally take possession himself or he could place it in the possession of a third person for him. None of the parties are charged with being in bad faith, on the contrary, bad faith in all parties is expressly made by plaintiff's own petition to date from the service of his petition upon them. Tax titles are *prima facie* valid. They furnish a commencement for the long prescription of ten years. When adjudicatee took possession in good faith and was permitted to hold it undisturbed for so long a period plaintiff was bound to know that other parties were in possession of the property, and it was gross negligence on his part not to have taken steps to protect his interests sooner. If this property was his, it was his duty to have had it assessed and to have paid the taxes. He was bound to know that he was delinquent and that under the law, as it now stands, the property would be sent to sale at a fixed date. Cases of this kind present no features of hardship or harshness, where men of full age are the parties in interest, on the contrary, this tardy advance of claims is generally at the expense of third parties.

Plaintiff urges that at the date of the purchase by Mrs. Calmes from Cason she was a married woman and the purchase by her was an absolute nullity. We have no reason to know that she was a married woman at that time, for in the sale from N. B. Calmes to herself, made almost simultaneously, she was described as the former wife of Thomas J. Calmes, but whether she was or was not, the fact would not advance the plaintiff. If Mrs. Calmes did not buy, either Cason remained the owner with Mrs. Calmes holding possession for him, or the property went out of the ownership of Cason into that of the community of Calmes and his wife. In either event Gauthier's possession had certainly been broken by Cason's possession.

If the husband was alive at the time he has never repudiated his wife's purchase, and the plaintiff cannot challenge Mrs. Calmes' want of authorization from her husband. There was no legal impediment to Calmes himself purchasing from Cason at that time. After the

adjudication to Gauthier he was free to acquire a new title and to hold by adverse possession under Cason's claim of ownership. We need not under our view of the situation, under the pleadings and the facts of this particular case, discuss the matter of the tax sale. There is one matter which we will allude to before closing; it is the claim of the plaintiff to the ownership of what is referred to throughout as the Lee tract, and as being in Section 14, Township 5, South Range, 7 East.

There has been no correction of that description; if it was wrong plaintiff purchased it by that description, and it was assessed and sold at tax sale by the same description. He says it originally belonged to Napoleon B. Calmes, was purchased by Dr. Lee, was sold at tax sale as Dr. Lee's property and purchased at that sale by Thomas J. Calmes, but while there is evidence in the record that Napoleon B. Calmes had at one time purchased lands, there is none that Dr. Lee ever purchased it from him. On the contrary, the tract which plaintiff claims was bought by Lee from N. B. Calmes, was sold by the latter himself in 1893, to Mrs. Mary Calmes, the defendant to this suit.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be, and the same is hereby affirmed.