(42 South. 762.)

No. 16,335.

HICKEY v. SMITH.

In re HICKEY.

(Jan. 7, 1907.)

ADVERSE POSSESSION — TAX DEED — BONA
FIDES.

Where a person who is unable to read re-
ceives a tax deed containing interlineations,
under circumstances which justify the belief,
on his part, that such interlineations were made
by the officer executing the deed, he will be
held to be a possessor in good faith, and (the
deed being translative of property) protected
by the prescription of 10 years.

[Ed. Note.—For cases in point, see Cent. Dig.
vol. 1, Adverse Possession, §§ 193, 395.]

(Syllabus by the Court.)

Action by Annie H. Hickey against J.
Franklin Smith. Judgment for plaintiff was
reversed by the Court of Appeal, and she ap-
plies for certiorari or writ of review. Dis-
missed.

O'Neill & Alpha, for applicant. Charles
Leonard Wise and Benjamin Félix Winches-
ter, for respondent.

## Statement of the Case.

MONROE, J. Plaintiff (applicant here)
brought suit in the district court for the par-
ish of St. Mary, setting up title to certain
land in that parish, of which defendant holds
possession under a tax deed, alleging that the
same was not assessed for the taxes for which
it purports to have been sold, that it was
not advertised by the tax collector, and that
her name was fraudulently interlined in the
tax deed, after the execution thereof, and
praying that said deed be decreed null, and
that she have judgment for the land, with
rents and revenues. Defendant answered,
denying that plaintiff has any interest in the
property claimed by her, affirming the valid-
ity of the tax deed, alleging possession there-
under in good faith, and the payment of tax-
es since 1887, and pleading the prescription
of one, three, and ten years. There was judg-
ment in the district court awarding plaintiff
the property, but dismissing her demand for
rents and revenues, and also dismissing the
reconventional demand of the defendant
(made in the alternative) for the reimburse-
ment of moneys expended for taxes and im-
provements, which judgment having been re-
versed by the Court of Appeal, plaintiff asks
that the ruling of the tribunal last mentioned
be reviewed.

It appears from the evidence in the record
that on January 28, and December 15, 1870,
plaintiff (then Annie Harlowe) acquired from
S. S. Green and the state of Louisiana, re-
spectively, certain contiguous tracts of land,
described in the petition as lot 2 of section
12, township 17 S., range 12 E., containing
22 acres, and N. W. ¼ of S. W. ¼ and S. E.
¼ of S. W. ¼ of section 1 and N. E. ¼ of
N. W. ¼ of section 12, township 17 S., range
12 E., containing 120 acres; that on January
20, 1870, she sold an undivided half interest
in the tracts so described, as, also, in lots 3,
6, and 7 of section 1, township 17 S., range
12 E., containing 86.65 acres, to C. W. Patten
(how it happened that she sold the 120-acre
tract before she purchased it, how and when
she acquired the three lots last mentioned,
and why those lots are not claimed in this
suit do not appear). In January, 1872, Pat-
ten sold the interest thus acquired by him
to John Holthaus, who, in February, 1874,
sold the same to J. P. McCourt. Plaintiff at-
tempted to show that she reacquired said in-
terest from Holthaus, but the evidence on
that subject consists of an instrument (ad-
mitted over objection) purporting to have
been executed before Wm. McC. Jones, notary,
on the ——— day of November, 1872, which
was not signed by the notary, or, at the date
of its execution, by any witnesses, and the
signatures to which (of the parties) were not
proved on the trial; the only attempt in that
direction being a certificate, which appears to
have been placed upon the instrument by

Edward Hickey (said to have been the husband of the plaintiff) and E. M. Hunt on November 12, 1874, in the presence of John Bendernagel, notary, to the effect that they were present when the instrument was signed by John Holthaus and Annie Harlowe. It is hardly necessary to say that this instrument as presented can be given no probative effect, but, if it was otherwise, it does not appear that it was executed prior to the date of the conveyance by Holthaus to McCourt. So far, therefore, as the proof in the record goes, after February, 1874, plaintiff held the property here claimed (as also the 86.65 acres not claimed) in indivision with McCourt. On the other hand, the tax deed upon which defendant relies, and which plaintiff prays to be decreed null (assuming it to have the probative effect claimed for it), shows that the different tracts, containing together 228 acres, and known as "Miriam Grove," were adjudicated by the tax collector on April 2, 1887, to the defendant, for the taxes of 1884, 1885, and 1886, "due by estate of J. P. McCourt and Annie Harlow, as owners thereof, according to the tableau and assessment rolls for the years 1884, 1885, and 1886."

In support of the charge that the property had not been assessed for the taxes for which it was sold, plaintiff offered the testimony of the State Auditor under commission, to the effect that the assessment rolls of the parish of St. Mary, as filed in his office, show no assessments for 1884, 1885, and 1886 in the names of the estate of J. P. McCourt and Annie Harlowe, or either of them. Later in the trial plaintiff offered the original rolls for those years, "same to be withdrawn and certified copies to be made of those pages therein containing the letters H. M. and McC, and, recalling the clerk (and ex officio recorder), propounded to him the question: 'Will you please examine these rolls for the years 1884, 1885, and 1886, and state whether or not you find the name "Annie Harlowe" or the name "J. P. McCourt," or the "estate of J. P. Mc-

Court" therein.'" Whereupon "counsel for defendant objected to the reference to the rolls, unless it is first shown that these books constitute the complete assessment rolls for those years. The court rules that the rolls themselves were the best evidence, and that the rolls should be the complete assessment rolls of the parish, sustaining the objection as to the testimony of the witness. To which ruling of the court the counsel for the plaintiff excepted and reserved his bill, taking this note in lieu thereof." The witness was then asked, on cross-examination: "Are they the only rolls in your office covering the years 1884, 1885, and 1886?" To which he replied, "Yes, sir." Neither the rolls themselves nor copies thereof are, however, to be found in the record which has been forwarded to this court.

The tax deed bears the signature of the tax collector, and is, unquestionably, the original instrument executed by that officer. After the words, "Estate of J. P. McCourt," however (which are found in two places), there appear to have been interlined the words, "and Annie Harlowe," which interlineations are reproduced in the inscription of the deed on the books of the conveyance office. The present clerk of the court (and ex officio recorder), sworn as a witness for plaintiff, testifies that the interlineations last mentioned are in the handwriting of the then deputy recorder of conveyances. B. F. Winchester, a reputable member of the bar, sworn as a witness for defendant, testifies, in part, as follows:

"I had about five or six claims to collect against Annie Harlowe and Hickey, and I inquired as to the total value of the property, and was told that it was worth about $20. (Objected to, and objection sustained in so far as the testimony tended to prove assessment.) I told Bowling, who held the mortgage note against Annie Harlowe, and the other parties who held claims, that the property was not sufficient to get their claims out of, and that they would be spending good money for bad. Q. State whether you bought this property at tax sale in the name of J. Franklin Smith. A. I did. Q. Was J. Franklin Smith present

at the sale? A. No, sir; I never came across Smith until the property was advertised, and I was glad to get him as a purchaser. Q. Did J. Franklin Smith ever, at any time, ask you to have this property assessed and sold for his benefit? A. No, sir; it was my client that wanted that. Q. Do you know J. Franklin Smith? A. I am well acquainted with him. Q. Do you know of your own knowledge whether he is illiterate or not? He is very illiterate—can neither read nor write, and has often brought to me papers to read to him or to write for him. Q. I now hand you an instrument, offered here in evidence [being the tax deed], and ask you to examine it thoroughly. Are you acquainted with the signature at the bottom? A. I recognize the signature at the bottom as that of A. G. Frere, well known to me personally; and I recognize the signatures of the witnesses J. W. Lyman and J. B. Verdun, Jr., having seen their signatures often. Q. I ask you to examine the acknowledgment of that deed—to examine the signature of J. F. Smith per B. J. Winchester. A. That is my handwriting. I wrote it. Q. State whether or not this was the original act of sale from the sheriff to J. Franklin Smith, as signed by you? A. After paying the money to the sheriff, either Mr. Frere or Mr. Lyman handed me this document as the title of J. Franklin Smith, to take the Miriam Grove place. Just as it is here, it was given to me. I took it down to Morgan City and gave it to Smith, and told him this was his title. I know of no other document myself."

There is no other testimony than this concerning the interlineations in the tax deed, the advertisement of the property, or the particulars of the sale, and it is shown, without attempt at contradiction, that defendant went into possession at once, and had been in possession, openly, peaceably, and uninterruptedly, as owner, under said tax deed for some 18 years, when this suit was brought, during which period he had paid the taxes and improved the property, as alleged in his answer.

### Opinion.

There is no proof in the record before us concerning the assessment of the taxes for which the property in question was sold, save that of the State Auditor, to the effect that the rolls, as filed in his office, do not show such assessment. It may be, however, that there was neglect in the matter of filing other rolls. At least, that would appear to be as

likely as that the tax collector should have sold property that had never been assessed, and should have recited the assessment in the tax deed. Assuming, however, that there was no assessment, and that, there having been no assessment, there could have been no valid sale for taxes within the meaning of the Constitution, we are, nevertheless, of opinion that defendant's title is protected by the prescription of 10 years, since the evidence to the effect that he received the deed here attacked, in its present condition, is uncontradicted, and, as the party who delivered it to him testifies that he received it in that condition from the officer by whom it was executed, it is clear that, even if defendant had been able to read, the interlineations, so far as he is concerned, are sufficiently accounted for.

It is therefore ordered, adjudged, and decreed that the judgment of the Court of Appeal remain undisturbed, and that this proceeding be dismissed, at the cost of the applicant.