(90 South. 419)

No. 23398.

## EIVERS' HEIRS v. RANKIN'S HEIRS.

(Nov. 28, 1921. Rehearing Denied Jan. 2, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Taxation** ⊙⇒734(6), 805(3)—**Dual assessment on part of land and payment of taxes on such part renders tax sale void; void sale not cured by prescription.**

   The fact that only a part of the property sold for delinquent taxes was dually assessed, and that the taxes on the part so assessed were paid previous to the date of the tax sale, no matter by whom paid, has the effect of annulling the tax sale, the same as if all of the property had been dually assessed and all of the taxes had been paid; and such a nullity is not cured by the prescription of 3 years.

2. **Adverse possession** ⊙⇒79(4), 84—**Bona fide tax sale purchaser acquires title by 10 years' possession; tax sale purchaser not required to investigate assessment rolls.**

   A bona fide purchaser at a tax sale, receiving a deed prima facie valid, though in fact invalid, after having actual and notorious possession of the property in good faith, for 10 years, acquires an indefeasible title by prescription acquirendi causa, and it is not essential to his good faith that he should investigate

the assessment rolls or verify the recitals of the tax deed, as he may presume that the assessor and tax collector have performed their duties.

**3. Adverse possession ☞100(1) — Occupancy of part is possession of all within boundaries of deed.**

Occupancy of a part of a tract of land, by virtue of a title for the whole tract, is, for the purpose of the prescription of 10 years acquirendi causa, possession of all the land within the boundaries or limits described in the deed.

**4. Adverse possession ☞114(2) — Witness need not identify land by government survey.**

In trial of issue of adverse possession, it did not discredit testimony as to defendants' predecessor's adverse possession that the witnesses could not identify the land by reference to the subdivision of the section, and that some of them could not approximate the area of land that he had under fence, where they identified the land by landmarks, such as the railroad track, a conspicuous viaduct, and a city fire station.

Appeal from First Judicial District Court, Parish of Caddo; John R. Land, Judge.

Action by heirs of Patrick S. Eivers against heirs of Henry S. Rankin. From judgment for defendants, plaintiffs appeal. Affirmed.

Joseph H. Levy, of Shreveport, for appellants.

Blanchard, Goldstein & Walker, of Shreveport, for appellees.

O'NIELL, J. Plaintiffs appeal from a judgment rejecting their demand to have a tax deed decreed null and to regain title to a tract of land containing 14.72 acres in the city of Shreveport. The district court maintained the defendants' plea of prescription of 10 years, acquirendi causa; which is the only defense they urge.

The land in contest is entirely within the S. W. ¼ of N. W. ¼ of section 2, in township 17 north, range 14 west, and is described by survey thus: Commencing at a point on the south or southwest side of the main track of the K. C. S. & G. Railway, and 100 feet therefrom (measured at right angles), said starting point being 15 feet west from the east boundary line of the S. W. ¼ of N. W. ¼ of section 2, in township 17 north, range 14 west; thence south (on a line parallel with said east boundary line of the S. W. ¼ of N. W. ¼ of section 2, and 15 feet therefrom) 248.6 feet, to the center line of section 2; thence west (along said center line of section 2) 1,305 feet, to the west boundary line of the section; thence north (along said west boundary line of section 2) 728.57 feet, to a point on the south or southwest side of said K. C. S. & G. Railroad track and 100 feet distant therefrom (measured at right angles); and thence in a southeastern direction, on a line parallel with said railroad track and 100 feet distant therefrom, to the place of beginning.

Plaintiffs are the heirs at law of Patrick S. Eivers, who acquired title to the N. W. ¼ of the section by patent from the United States, dated the 19th of November, 1874. The heirs of Eivers sold the east half of this quarter section to J. B. Chrisman, who sold it to Andrew Currie. The latter acquired title to the west half of the same quarter section, including, of course, the 14.72 acres in contest, by virtue of the tax deed, dated the 12th of August, 1882, for the taxes of 1881, said to have been assessed to the heirs of P. S. Eivers. The property is described in the tax deed as follows:

"W. ½ of N. W. ¼, Sec. 2, Twp. 17, range 14, of the parish of Caddo, together with all buildings and improvements thereon, and being same property assessed to heirs of P. S. Eivers upon the tableaux of taxes in and for the parish of Caddo for the year 1881."

The tax sale to Currie was recorded in the conveyance records of Caddo parish on the 12th of August, 1882. The defendants hold title by mesne conveyances from Currie.

[1] It is conceded that, for several rea-

sons, the tax sale was not valid. The land described in the assessment for the taxes of 1881 was the N. ½, instead of the W. ½, of N. W. ¼ of section 2, and the assessment was not in the name of "Heirs of P. S. Eivers," but in the name of "C. C. Eivers," as a nonresident. The taxes thus assessed to C. C. Eivers for 1881 were paid. There was also assessed to John Caldwell, in 1881, the W. ½ of S. W. ¼ of N. W. ¼ of the section, which description embraced more than half of the land in contest; and the taxes so assessed to Caldwell were marked "Paid," on the assessment roll. There was also assessed to E. & B. Jacobs, in 1881, the N. ½ of the same quarter section, which assessment, of course, was a dual assessment of the north half of the land sold for taxes to Currie; and the taxes assessed to E. & B. Jacobs were paid previous to the date of the tax sale to Currie. There was therefore a dual assessment of three-fourths in area, being the N. ½, and the W. ½ of S. ½, of the land sold to Andrew Currie for delinquent taxes; and the taxes so assessed, at least on the N. ½ of the land sold to Currie, were paid previous to the date of the tax sale. It is not certain whether the taxes assessed to C. C. Eivers and to John Caldwell were paid before or after the date of the tax sale to Currie; but that is a matter of no importance, because it is certain that there was a dual assessment and previous payment of the taxes on the north half of the land sold to Currie. The fact that only a part of the property sold for delinquent taxes was dually assessed, and that the taxes on the part so assessed were paid previous to the date of the tax sale, no matter by whom paid, has the effect of annulling the tax sale, the same as if all of the property had been dually assessed and if all of the taxes had been paid; and such a nullity is not cured by the prescription of three years. Kellogg v. McFatter, 111 La. 1037, 36 South. 112; Harris v. Deblieux, 115 La. 147, 38 South. 946; Doullut v. Smith, 117 La. 491, 41 South. 913; Page v. Kidd, 121 La. 6, 46 South. 35; Board of Commissioners v. Concordia Land & Timber Co., 141 La. 247, 74 South. 921.

It appears that the tax collector, before offering the property for sale for taxes, corrected the assessment to this extent: He erased the initials "C. C." before the name "Eivers," and interlined the name "Patrick" and the word "Heirs," thus making the assessment read as if made in the name "Patrick Eivers Heirs." He did not, however, on the assessment roll, change the erroneous subdivision "N. ½" to the correct subdivision "W. ½," but he described the correct subdivision, "W. ½," in the tax deed; and he further described the land in the deed as "being same property assessed to the heirs of P. S. Eivers upon the tableaux of taxes in and for the parish of Caddo for the year 1881," although, in fact, it had not been so assessed.

The revenue law then in force, being Act 77 of 1880, did not purport to give the tax collector authority to correct an error in the name of a person assessed for taxes, although section 49 of the statute did give him authority to correct any clerical error in the description of any property assessed, viz.:

"If any clerical error in the description of any property be discovered by the tax collector or sheriff it shall be his duty to note the correct description on the margin of the tax list and tax rolls, and to advertise and sell said property by its correct description."

The important fact is that the land belonging to the heirs of Patrick S. Eivers, being the W. ½ of N. W. ¼ of section 2, was so described in the tax deed, and was further described therein as having been assessed in their name; and we presume that it was so advertised. Whether it was or was not so advertised, however, would not alter the fact that the tax deed was, on its face, translative

of the property that belonged to the heirs of P. S. Eivers.

[2] It is well settled that a bona fide purchaser at a tax sale, receiving a deed prima facie valid, though in fact invalid, after having actual and notorious possession of the property, in good faith, for 10 years, acquires an indefeasible title by prescription acquirendi causa. A purchaser at tax sale may, in good faith, presume that the assessor and the tax collector have performed their duties; and it is not essential to the purchaser's good faith that he should investigate the assessment rolls or verify the recitals of the tax deed. Eldridge v. Tibbitts, 5 La. Ann. 380; Hickman v. Dawson, 35 La. Ann. 1086; Giddens v. Mobley, 37 La. Ann. 417; Barrow v. Wilson, 38 La. Ann. 209; Montgomery v. Whitfield, 41 La. Ann. 649, 6 South. 224; Denegre v. Buchanan & Donan, 47 La. Ann. 1563, 18 South. 504; Michel v. Stream, 48 La. Ann. 349, 19 South. 223; Heirs of Wykoff v. Miller, 48 La. Ann. 475, 19 South. 478; Gauthier v. Cason, 107 La. 52, 31 South. 386; Hickey v. Smith, 118 La. 169, 42 South. 762; Soniat v. Donovan, 118 La. 847, 43 South. 462.

Counsel for appellants cites seven decisions in support of his contention that an invalid tax sale cannot support the plea of prescription of 10 years, acquirendi causa, even though the deed be prima facie valid; none of which decisions, however, do we find appropriate, viz.: Renshaw, Cammack & Co. v. Imboden, 31 La. Ann. 661; Marmion v. McPeak, 51 La. Ann. 1531, 26 South. 376; Millaudon v. Gallagher, 104 La. 714, 29 South. 307; Cane v. Herndon, 107 La. 591, 32 South. 33; Guillory v. Elms, 126 La. 560, 52 South. 767; Quaker Realty Co. v. Posey, 130 La. 941, 58 South. 822; Board of Commissioners v. Concordia Land & Timber Co., 141 La. 247, 74 South. 921. In the two cases last mentioned, as in Cane v. Herndon, the ruling was with regard to the prescription of three years, not 10 years. In Renshaw, Cammack & Co. v. Imboden, the nullity of the tax sale was patent on the face of the deed because, in violation of the statute, it was made for less than the amount of the taxes, penalties, and costs, as shown in the deed. In Marmion v. McPeak, as in Millaudon v. Gallagher, the purchaser at tax sale did not hold title in good faith because he did not pay the taxes which, by the terms of the statute, he was required to assume, and which, by the terms of the deed, he did assume. In Guillory v. Elms, the purchaser at tax sale was held to have been in bad faith because he prepared the deed, and wrote into it a description of property which could not otherwise have been identified as the property assessed.

There is no proof nor presumption, in fact it is not even contended, that Andrew Currie was ever aware that the tax collector had corrected the assessment, or that the description in his tax deed did not correspond with the description in the assessment, or that a part of the land had been dually assessed, or that any part of the taxes for which the property was sold had been paid.

It is argued on behalf of appellants that, even if we should give effect to the correction made by the tax collector, and treat the assessment made in the name of C. C. Eivers as having been made in the name of the heirs of Patrick S. Eivers, there was no assessment of the south half of the land sold to Currie for taxes. That is true, unless we regard the description N. ½ of N. W. ¼, as a clerical error, having been intended for the W. ½ of N. W. ¼, because the N. ½ of the N. W. ¼ takes in only the N. ½ of the W. ½ of the quarter section, besides, of course, the N. ½ of the E. ½ of the quarter section. But that fact does not alter the fact that the tax deed was, on its face, translative of the W. ½ of the quarter section, which was the correct description of the land that belonged to the heirs of Patrick S. Eivers, and which, we assume, was intended to be assessed to them, or to

C. C. Eivers. In that respect, this case is like that of Mrs. Annie Hickey v. J. Franklin Smith, 118 La. 169, 42 South. 762, where the plea of prescription of 10 years prevailed. The plaintiff in that case, formerly Annie Harlowe, owned in indivision with J. D. McCourt the land which was sold to Smith for taxes. It was not assessed either to her or to McCourt. In the tax collector's deed to Smith, it appeared that the land had been assessed to "Estate of J. P. McCourt," and, after his name, there was interlined in the deed, and in the conveyance record where it was recorded, "and Annie Harlowe." Smith's attorney, who had received the deed from the tax collector and delivered it to Smith, who was an illiterate man, testified that the interlineations were in the deed when he received it from the tax collector. This court ruled therefore that the interlineations were sufficiently explained to acquit Smith of knowledge that the land had not been assessed in the name of Annie Harlowe. The court said:

"Assuming, however, that there was no assessment, and that, there having been no assessment, there could have been no valid sale for taxes within the meaning of the Constitution, we are, nevertheless, of opinion that defendant's title is protected by the prescription of 10 years, since the evidence to the effect that he received the deed here attacked, in its present condition, is uncontradicted, and, as the party who delivered it to him testifies that he received it in that condition from the officer by whom it was executed, it is clear that, even if defendant had been able to read, the interlineations, so far as he is concerned, are sufficiently accounted for."

The case before us is a better basis for the 10 years' prescription than was the case of Hickey v. Smith, because, in this case, there were no interlineations in the tax deed, nor other such circumstance that might have suggested to the purchaser at the tax sale to investigate the assessment rolls before paying for the property. Our conclusion is that the tax sale to Andrew Currie, being prima facie valid, although in fact invalid, was a title sufficient to sustain the prescription of 10 years acquirendi causa.

[3] The testimony in the case convinced the district judge, and it convinces us, that Andrew Currie and those claiming title from him had actual possession of the land in contest for a period longer than 10 years previous to the institution of this suit. In fact, the beginning of Currie's possession was more than 20 years before the institution of this suit. The fact was established by the testimony of nine witnesses. Plaintiffs undertook to prove, by three witnesses, that the land had remained vacant and unfenced, but two of them admitted that a part of the land had been fenced, and that two small houses had been built upon it. The preponderance of the evidence is that Andrew Currie, more than 20 years before this suit was filed, had all of the west half of the quarter section, as well as the east half, under fence. The southern part of the west half, that is, the part that embraces the land in contest, was leased by Currie to a dairyman, and was fenced in and used by the dairyman as a pasture, from 1885 to 1891, and was thereafter used by Currie himself, or by another tenant, as a pasture. Currie had an orchard and nursery on the southern part of the east half of the section, and used the southern part of the west half as a pasture for his horses. Even though there may be some doubt that Currie had all of the west half of the quarter section under fence, there is no doubt that he actually occupied, and had under fence, a part of that half of the quarter section, more than 20 years before this suit was filed. In 1883, Currie sold to Austin Williams the 10 acres forming the S. W. ¼ of S. W. ¼ of the quarter section. Williams fenced in the 10 acres, built a small house or "shack" on it, and, after occupying it for 3 years, reconveyed it to Currie, after which it

became a part of the land which Currie leased to the dairyman. It is well settled that occupancy of a part of a tract of land, by virtue of a title for the whole tract, is, for the purpose of the prescription of 10 years acquirendi causa, possession of all the land within the boundaries or limits described in the deed. Henderson v. St. Charles Church, 7 Mart. (N. S.) 117; Green v. Witherspoon, 37 La. Ann. 751; Chamberlain v. Abadie, 48 La. Ann. 589, 19 South. 574; George v. Cole, 109 La. 833, 33 South. 784; Railsback v. Leonard, 118 La. 925, 43 South. 551; Berstine v. Leeper, 118 La. 1098, 43 South. 889; Leonard v. Garrett, 128 La. 543, 54 South. 987; Leader Realty Co. v. Taylor, 147 La. 256, 84 South. 648.

[4] The only circumstance that might be regarded as discrediting the testimony on the subject of Andrew Currie's possession of the land in contest is that the witnesses could not identify the land by reference to the subdivisions of the section, and that some of them could not approximate the area of the land that Currie had under fence. The witnesses, however, identified the land which Currie had under fence, by its proximity to the railroad track, and to a conspicuous viaduct, and by reference to a fire station which the city of Shreveport maintains on a part of the land which the city bought for that purpose. The reference to these landmarks shows, beyond all doubt, that the witnesses knew what land they were talking about; and the survey shows that the land in dispute is the land that they were talking about. There are very few, if any, witnesses, unless they be surveyors, who can identify a tract of land by the imaginary section lines or subdivisions of sections. Our conclusion is that the judgment sustaining the plea of prescription of 10 years is correct.

The judgment is affirmed, at appellants' cost.