187 So. 69

**KELLER et al. v. SUMMERS et al.**

No. 34541.

Feb. 6, 1939.

Rehearing Denied March 6, 1939.

J. O. Broussard, of Abbeville, and Dart & Dart, of New Orleans, for the plaintiffs-appellants.

John Nugier and Edward F. LeBlanc, both of Abbeville, for defendants-appellees.

FOURNET, Justice.

This is a petitory action instituted by Felicien W. Keller and the heirs of his deceased wife, to recover a certain lot of realty, with improvements, in the town of Abbeville, Louisiana. Coupled with this suit is an action of nullity to set aside a constable sale of the property to L. H. Summers, dated December 2, 1922, and the subsequent mesne conveyances thereof by

the adjudicatee Summers to Richard Le-Blanc by warranty deed dated March 8, 1924, and by LeBlanc to his divorced wife in an act of partition dated March 20, 1925, and also for damages at the rate of $25 a month for the use and occupancy of the property of which they have been deprived, beginning from the date of the adjudication.

The basis of plaintiffs' action is the nullity of the adjudication of the property at the constable sale because the bid was for an amount less than the aggregate amount of the outstanding mortgages affecting the property.

Defendants, in bar of plaintiffs' suit, filed exceptions of no cause and no right of action and pleas of prescription of five and ten years. The plea of prescription of ten years was maintained by the trial judge and plaintiffs have appealed. Defendants answered the appeal, praying that the judgment of the trial court be affirmed and that their exceptions of no right and no cause of action, and their plea of prescription of five years, be maintained.

The record shows that Felicien W. Keller, one of the plaintiffs, purchased, in 1907, from Adolph Brasseux, the property in controversy, described as lot No. 18 in Nixon's addition to the town of Abbeville. On October 30, 1917, L. H. Summers obtained a judgment against Keller in the third ward justice court, for the sum of $59.95 for materials furnished the debtor for the construction of a bakery shop, with interest, attorney's fees, and costs, and, pursuant to a writ of fieri facias issued

thereunder, on November 6, 1922, the constable for the said ward seized the property and, after due advertisement, offered the property for sale, but, there being no one who offered to purchase the property, it was readvertised and was adjudicated at the second sale on December 2, 1922, to the defendant L. H. Summers, seizing creditor, for the price of his bid, $150. Summers sold the property to LeBlanc by warranty deed dated March 8, 1924 for a cash consideration of $2,500. At that time LeBlanc was married to and living with Dora Choate, from whom he was subsequently divorced, and, by an act of amicable partition of the community, dated March 20, 1925, the defendant Dora Choate acquired the property in controversy.

At the time of the adjudication of the property at the constable sale, there were, as shown by the mortgage certificate which was read at the sale and is annexed thereto, the following mortgages: (1) A special mortgage in favor of Anaise Hebert in the sum of $800, recorded December 13, 1910; (2) a special mortgage in favor of the holder or holders in the sum of $1,000, recorded June 13, 1914; and (3) a special mortgage in favor of Elias Hebert in the sum of $50, recorded October 29, 1914.

When the plaintiff Keller acquired the property from Adolph Brasseux, he was married to and living with Anaise Hebert, who died intestate in October of 1921 and left as her sole heirs two daughters, Frances and Eurney Keller, the other plaintiffs here, who were placed in possession, by judgment dated October 17, 1925, of an undivided one-half interest in the property in controversy, and also of the $800 mortgage in favor of their mother.

Thus it may be seen that the bid by the seizing creditor at the constable sale was insufficient to discharge the privileges and mortgages existing on the property, as required by Article 684 of the Code of Practice. But in the instant case, according to plaintiffs' own allegations, L. H. Summers, seizing creditor, took immediate possession of the property when it was adjudicated to him at the constable sale and sold the same on March 8, 1924, by warranty deed, to Richard LeBlanc, who, together with his wife, Dora Choate, immediately took physical possession thereof, and, from the date of their amicable partition of the property following their divorce, March 20, 1925, the defendant Dora Choate continued her uninterrupted possession of the property until this suit was filed on December 7, 1935—"thirteen years after Summers' acquisition, nearly twelve years after LeBlanc's acquisition and nearly eleven years after Choate's."

The moral good faith of LeBlanc is not disputed. He paid a substantial amount for the lot in controversy; expended a considerable sum on its improvement; paid the accruing taxes; and occupied the property continuously and openly as his residence "long before he could have relied upon any plea of prescription or statute of repose." But counsel for plaintiffs contend that the trial judge was in error in maintaining the plea of prescription acquirendi causa of ten years, under Article 3478, Civ.Code, because in the deed from Summers to LeBlanc is contained the fol-

lowing clause, which is also contained in the act of partition, which constituted notice of their ancestor's title, and that they are, therefore, in bad faith:

"* * * this being the same property purchased at Constable Sale Judgment 3rd Ward Justice Court, Suit No. 168 Records J. S. Lyons, Justice of the Peace, by L. H. Summers on December 2nd, 1922 and of record in Vol. 77 of Conveyances, page 344 et seq Records of Vermilion Parish, La."

Plaintiffs, in support of their contentions, cite as authority the following: Lee v. Long, 166 La. 1084, 118 So. 320; Templet v. Baker, 12 La.Ann. 658; McDade et al. v. Bossier Levee Board, 109 La. 625, 33 So. 628; State v. F. B. Williams Cypress Co., 131 La. 62, 58 So. 1033; Jackson v. Harris, 18 La.App. 484, 136 So. 166, 137 So. 655; Industrial Lumber Co. v. Farque et al., 162 La. 793, 111 So. 166; Wells et al. v. Blackman, 121 La. 394, 46 So. 437; Gerrold v. Barnhart, 128 La. 1099, 55 So. 688; Victoria Lumber Co. v. Dawson, 159 La. 848, 106 So. 327; Lawler v. Bradford, 113 La. 415, 37 So. 12; Sabatier v. Bowie Lumber Co., 129 La. 658, 56 So. 628; Tennent v. Caffery, 170 La. 680, 129 So. 128; Tyson v. Spearman, 190 La. 871, 183 So. 201; and 27 R.C.L. 710.

An analysis of these cases reveals that they go no further than to hold that "Where reference is made in an act of sale of real estate to the title under which the vendor holds, both acts should be consulted, and taken together, to ascertain the true *description* of the property." (Italics ours.) In the case at bar we are not dealing with a question of the description of the property, but with the title thereof, and, as the sole question for our consideration is the good faith of defendants, the cases are not applicable.

"The prescription acquirendi causa of ten years is based on Article 3478 of the Revised Civil Code, as amended by Act No. 161 of 1920 and Act No. 64 of 1924, which. provides that 'he who acquires an immovable in good faith and by just title prescribes for it in ten years. * * *'

" 'The good faith, spoken of in the preceding article, is defined in the chapter which treats of possession,' (Art. 3480), and in that chapter 'the possessor in good faith' is defined to be 'he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another.' (Art. 3451.)

"A just title is defined as '* * * a legal and transferable title of ownership in the possessor * * *' (Art. 3483). And to acquire by a just title the possessor must honestly believe that he acquired the same from the real owner (Art. 3484). But 'to enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents: 1. That the possessor shall have held the thing in fact and in right, as owner * * *. 2. That the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal * * *.' (Art. 3487)."

Tyson v. Spearman, 190 La. 871, 183 So. 201, 204.

 *"Bad faith is not to be imputed to a purchaser merely because an examination of the records would have disclosed a defect in the vendor's title.* What is meant by deed valid in form, or prima facie translative of property, is one that has no defect apparent upon its face." Delouche v. Rosenthal, 143 La. 581, 78 So. 970, 972. "If no one could invoke successfully the prescription of 10 years who could have discovered by an examination of the public records before buying the property that the seller had no title, the plea would never be available, because no one could invoke it except one having a valid title and having therefore no need for the prescription." Land Development Co. v. Schulz, 169 La. 1, 124 So. 125, 127. (Italics ours.)

 In the early case of Fletcher v. Cavalier, 4 La. 267, we find the following pertinent statement:

"When the title under which the vendor sells, is shown to the buyer, or delivered to him, or he declares in the act he is acquainted with it, the defects of that title are, of course, known to him; *but unless a reference to the place where that title can be found, be equivalent, in law, to an actual exhibition of it, we cannot presume in point of fact, the knowledge was obtained.* The well established rule being, as we understand, that good faith is always presumed, until the contrary is shown. That presumption is not destroyed, in our judgment, by proving that the vendee had the means of obtaining knowledge of the defect in his title. This would be saying, that negligence in not making himself acquainted with the fact, was equivalent to an ignorance of law, when the fact was brought home to him." (Italics ours.)

To the same effect is the holding in the case of Land Development Co. v. Schulz, 169 La. 1, 124 So. 125, 128, wherein issues almost identical with those in the present case were raised, and the court held:

"The fact that, in the deed from Watts to Mrs. Schulz, the title which he transferred was declared to be a tax title, was not of itself sufficient to make the transfer unavailing as a basis for the prescription of 10 years; for the Constitution (Const.1921, art. 10, § 11) declares that tax deeds shall be received in evidence as prima facie valid sales; and it is well settled that a tax deed may be the basis for the prescription of 10 years. Giddens v. Mobley, 37 La.Ann. 417; Barrow v. Wilson, 38 La.Ann. 209; Montgomery v. Whitfield, 41 La.Ann. 649, 6 So. 224; Denegre v. Buchanan & Donan, 47 La. Ann. [1559], 1563, 18 So. [501], 504; Michel v. Stream, 48 La.Ann. [341], 349, 19 So. 215; Heirs of Wykoff v. Miller, 48 La.Ann. 475, 19 So. 478; Gauthier v. Cason, 107 La. 52, 31 So. 386; Hickey v. Smith, 118 La. 169, 42 So. 762; Soniat v. Donovan, 118 La. 847, 43 So. 462; Eivers' Heirs v. Rankin's Heirs, 150 La. 4, 90 So. 419."

In the recent case of Hamilton v. Rickerson, 185 La. 199, 168 So. 774, 775, this court held:

"The effect of this statute [Sec. 1 of Act No. 217 of 1932] is to place a sheriff's deed, which is regular and valid on its face, in the same category as a tax deed, and makes it equally susceptible of functioning as one of the elements of a valid prescriptive title." (Brackets ours.)

And again, in the case of Mendelsohn v. Armstrong, 52 La.Ann. 1300, 27 So. 735, 736, which is factually analogous to the instant one, the court held:

"*The good faith of Eugene Gaudinse is impugned,* and it is earnestly argued by plaintiff's counsel that he was aware of the act of Castell, at whose succession sale the property was sold to Gaudinse, *for the reason that there is some reference in the deed to the prior title.* This reference does not prove any wrong on the part of Castell, as it could only have served to indicate that by consulting other prior deeds, years ago, he (Castell) had done that which no faithful agent would do; that is, dispose of the property of his principal to his own interest. We do not think that the failure of the defendant to have discovered this unprincipled act should· be held to conclude him, if it afterwards appears that he was in good faith in buying the property. *In matter of these sales, the vendee, who pays the price, goes into possession, improves the property, and pays the taxes, is presumed to be in good faith until the contrary is shown.* If there is nothing to show knowledge of a fact not apparent, or which downright negligence alone could have overlooked, it should not be concluded that one was not sincere in his purchase, or sought to take advantage.

Fraud will not be presumed. Rev.Civ. Code, arts. 1848, 3481, 3482." (Italics ours.)

We therefore conclude that although there is a reference in Summers' deed to LeBlanc and also in the act of partition between LeBlanc and his divorced wife of Summers' acquisition of the property at a constable sale and the book and page where recorded, it is nevertheless prima facie translative of title, and his vendee is not concluded by any defect in the Summers' title that an examination of the record might disclose unless it be shown that the defect was known to him.

Plaintiffs further contend that defendant LeBlanc having admitted to their (plaintiffs') attorney, in a conversation, that prior to his purchase from Summers he had caused the title to the property to be examined by an attorney, with the result that it was declared to be good, is in legal bad faith. As stated by the trial judge, "Whatever value and effect such contention would have if legally established by the evidence, need not be decided as it has not been established by any direct or affirmative evidence. LeBlanc testified that he had not caused the title to be examined and had not made the statement attributed to him. The fact that he is charged with having made a prior contradictory statement to the effect that the title had been examined at his instance and pronounced good is merely evidence tending to impeach him, and at the most has the effect of discrediting him entirely, thereby leaving the judicial mind in the state of not knowing what statement to

believe and, consequently believing neither. 'Thus, we do not necessarily accept his former statement as replacing his present one; the one merely neutralizes the other as a trustworthy one.' Wigmore's Evidence, Vol. 2, Sec. 1018."

We are therefore of the opinion that the trial judge properly maintained the defendants' title by ten years prescription acquirendi causa.

Having reached this conclusion, it is unnecessary for us to discuss the exceptions of no right and no cause of action and the plea of prescription of five years now being urged by the defendants in answer to the appeal.

For the reasons assigned, the judgment of the lower court is affirmed; appellants to pay all costs.