O’NIELL, C. J.
 

 (dissenting).
 

 Conceding that the first day of the year is the day on which the status or condition of all property must be taken for the purpose of assessment for taxes, it must be conceded also that the property on which the New Orleans Bank & Trust Company claims an exemption from taxation for the year 1930 was not “property devoted to charitable undertakings” on the 1st day of January, 1930.
 
 *959
 
 In fact it was not “property' devoted to charitable undertakings,” as expressed in section 4 of article 10 of the Constitution, — because it was not used as a hospital, — at any time during the year 1930. The property ceased to be used as a hospital on the 6th of December, 1929, when the New Orleans Bank & Trust Company notified the hospital authorities'to move the patients out of the institution, in order that the bank' might have the sheriff take possession of the property, for the bank, as seizing creditor. And the property ceased even to be possessed by the hospital authorities on the 9th of December, 1929, when the sheriff actually seized and took possession of the property, including everything in the building, for the bank, as seizing creditor. A seizure of property by the sheriff, under a writ of fi. fa., divests the owner of his possession as completely as if the property were already sold by the sheriff. Prevot v. Hennen, 5 Mart. (O. S.) 221; Wafer v. Pratt, Sheriff, et al., 1 Rob. 41, 36 Am. Dec. 681; Winn v. Elgee, 6 Rob. 100; Paul v. Hoss, 28 La. Ann. 852, 853; Gauthier v. Cason, 107 La. 52, 31 So. 386.
 

 It seems to me that the quotation from Cooley on Taxation, vol. 2, § 716, p. 1500, in the prevailing opinion in this case, is decisive of the case, viz.: “If the exemption of property is based upon the use to which it is put, the exemption ceases when the use ceases.”
 

 It is said in the prevailing opinion in this case that the quotation from Cooley on Taxation means that the right of exemption is lost when the use of the property is voluntarily abandoned or thrown away, or its possession is voluntarily forsaken by the owner. And it is said that the property and rights of individuals are sometimes abandoned by reason of circumstances over which they have no control, such as war, plague, epidemic, or flood. They, of course, are fortuitous events. But a seizure under a writ of fieri facias, to satisfy a judgment obtained on a conventional obligation, is not a fortuitous event, or a calamity to be classed with war, .plague, epidemic, or flood. When the hospital authorities mortgaged their property to the bank, they thereby consented that the property might be seized and sold by the sheriff if they failed to pay their obligation to the bank. The mortgaging of the property was not a matter beyond their control; and it was as voluntary an act, as far as the legal consequences went, as a conventional sale of the property would have been.
 

 I submit, therefore, that the quotation from 1 Cyc. pp. 4, 5, and 6, on the subject of “Abandonment of Property,” is entirely beside the question. The only sense in which it can be said that the hospital authorities did not abandon their property voluntarily is that, at the time of the seizure, they preferred to keep the property and pay the debt, but were not able to do so. But, when they incurred the debt in favor of the bank, and mortgaged the property to secure the payment of the debt, they voluntarily abandoned any and all right to prevent a seizure and sale of the property in the event of their failure to pay the debt. A discussion of the subject of “Abandonment of Property” or “Voluntary Abandonment” does not seem to me relevant to this case; the fact being that the hospital authorities lost possession of their property as a lawful consequence of their voluntary act, and gave up possession of the property in
 
 *961
 
 obedience to an obligation which they entered into voluntarily.
 

 The decisions cited in the prevailing opinion in this case to the effect that a temporary suspension of the use of property, which is exempt from taxation because of its use, does not subject the property to taxation during the suspension, are not at all appropriate to this case. There was not merely a temporary suspension of the use of the property as a hospital, in this case. The property ceased to be used as a hospital in December, 1929, when the sheriff took possession for the bank; and the property has not been used as a hospital at any time since the sheriff took possession.
 

 It is true that some of the hospital authorities had some hope of regaining possession of the property, after it was seized and taken out of their possession; but their efforts were in vain. If they had succeeded in their effort to regain possession of the property before the sale, and had thereafter used the property for charitable purposes during the year 1930, the taxing authorities might have exempted the property from taxation, as the property of the’ hospital authorities, without doing violence to either the spirit or the letter of the law. But the fact that the hospital authorities had the vain hope of regaining possession of the property, from the date of the seizure to the date of the sale, January 24,1930, is no reason why the bank should be relieved of the payment of taxes on the property for the year 1930.- To exempt the bank from the payment of taxes on the property, for a year in which the property was never “devoted to charitable undertakings,” is not in accord with either the spirit or the letter of the law.
 

 For these reasons I respectfully withhold my signature from the prevailing opinion in this case.
 

 ST. PAUL, J., absent on account of illness takes no part.